2011 VT 53

David and Susan Southwick, Individually and as Parents and
Natural Guardians of Addie Southwick v. City of Rutland v.
The Rutland Recreation and Parks Department (Vermont Swim
Association)

[35 A.3d 113]

No. 10-128

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 20, 2011
Motion for Reargument Denied June 22, 2011

*William F. Ellis* of *McNeil, Leddy & Sheahan, P.C.*, Burlington, for Third-Party Plaintiff-Appellee.

*John D. Willey, Jr.* of *Boylan Associates, P.C.*, Springfield, for Third-Party Defendant-Appellant.

¶ 1. **Johnson, J.** This action stems from a written agreement between the City of Rutland and Vermont Swim Association (VSA) granting use of a City facility to VSA for its annual swim meet. A child attending the swim meet was injured when she fell from a piece of playground equipment in the park where the swim meet was held. The child's parents, plaintiffs, filed a complaint against the City, which then filed a third-party complaint against VSA asserting a claim for indemnity pursuant to the written agreement. VSA appeals the trial court's order granting the City's motion for summary judgment and entering judgment for the City in the amount of $700,000 on the indemnity claim. On appeal, VSA argues that the trial court erred because (1) the indemnity clause in the use agreement includes no express intent to indemnify the City for the City's own negligence as required by *Tateosian v. State*, 2007 VT 136, 183 Vt. 57, 945 A.2d 833; and (2) the circumstances surrounding the use agreement demonstrate the need for express intent language to provide indemnity for the City's own negligence. We affirm.

¶ 2. In July 2005, the City and VSA executed a written agreement that granted VSA use of Whites Pool, located in

Whites Park, for VSA's annual swim meet, scheduled for August 5 and 6, 2005. The agreement between the City and VSA included an indemnification clause stating that VSA "agree[d] to defend, indemnify and hold harmless Rutland . . . from all claims for bodily injury or property damage arising from or out of the presence of [VSA], including its . . . guests and others present because of the event or [VSA's] activities in or about Whites Park." The agreement also required VSA to procure liability insurance for the meet and to name the City as an additional insured entity.

¶ 3. During the swim meet, Addie Southwick fell from a piece of playground equipment in Whites Park and sustained various injuries. Plaintiffs' complaint against the City on her behalf alleged that the City had negligently installed and maintained the equipment. After the City asserted its claim against VSA for indemnity and plaintiffs added a claim against VSA, the City moved for summary judgment against VSA on two grounds: for enforcement of the indemnity clause in the agreement and for breach of contract for failing to procure insurance naming the City as an additional insured, as required by the agreement. VSA cross-moved for summary judgment against the City, arguing that the indemnification clause was inapplicable as a matter of law. The trial court granted the City summary judgment on its indemnity claim and denied VSA's cross-motion. The court also granted the City summary judgment on its breach of contract claim against VSA.[*] Prior to trial, the City reached a settlement agreement with plaintiffs, and the trial court dismissed with prejudice plaintiffs' claims against the City and VSA. Based on the summary judgment ruling for the City's indemnity claim against VSA, the court entered judgment for the City against VSA in the amount of $700,000. This appeal followed.

■ ¶ 4. We review an award of summary judgment de novo, construing all doubts and inferences in favor of the nonmoving party. *Collins v. Thomas*, 2007 VT 92, ¶ 6, 182 Vt. 250, 938 A.2d 1208. We must determine whether there are any genuine issues of material fact and, in their absence, whether either party deserves judgment as a matter of law. V.R.C.P. 56(c)(3); *Collins*, 2007 VT

---

[*] VSA has not appealed the trial court's ruling with regard to the breach of contract for failure to purchase insurance and list the City as an additional insured party.

92, ¶ 6. VSA does not allege that there are genuine issues of material fact. Rather, it argues that the lower court incorrectly interpreted and applied the indemnity provision contained in the agreement between the City and VSA. We interpret the indemnification provision of this agreement as we do all contracts; our goal is to give effect to the intent of the parties as it is expressed in their writing. *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 19, 702 A.2d 86, 88 (1997). When the contract language is unambiguous, we take these words to represent the parties' intent, *id.*, and the plain meaning of this language governs its interpretation. *In re West*, 165 Vt. 445, 450, 685 A.2d 1099, 1103 (1996). "We assume that parties included contract provisions for a reason, and we will not embrace a construction of a contract that would render a provision meaningless." *Id.* We must instead enforce the contract as it is written. *Id.*

¶ 5. The indemnification clause in the agreement signed by the City and VSA reads:

> Permittee [VSA] hereby agrees to defend, indemnify and hold harmless Rutland, . . . its officers, trustees, agents, and employees, from all claims for bodily injury or property damage arising from or out of the presence of Permittee, including its employees, agents, representatives, guests and others present because of the event or Permittee's activities in or about Whites Park, including the entrances, lobbies and exits thereof, the sidewalks, streets and approaches adjoining the property or any portion of the property used by Permittee or any of the above stated. Permittee shall be responsible for all costs of defense, including reasonable attorney's fees, and shall pay all fines or recoveries against Rutland. Permittee acknowledges that as a condition precedent to the execution of this Agreement by Rutland, Permittee agrees that it shall have no cause of action against Rutland for any damage, injury or loss to person or property, from cause [sic] whatsoever, except that which may result from the willful acts of Rutland.

The trial court held that the plain meaning of this language "unambiguously" stated that VSA agreed to indemnify the City for all claims for bodily injury made by guests of VSA and others present because of VSA's swim meet or VSA's activities in or

about Whites Park. The court emphasized that because there is no ambiguity in the language of the indemnification provision or the agreement as a whole, it did not need to look to technical rules of construction to interpret the parties' indemnification provision. Rather, it determined that the agreement should be read to mean exactly what it stated. The court rejected VSA's argument that this clause indemnified the City only for VSA's negligence, concluding that there would have been no reason to include this provision at all if the parties' intention had been that VSA was to be liable for its own conduct only and not for the City's. The court also rejected VSA's reliance on *Tateosian* for its claim that the indemnity provision does not cover claims arising from the City's own negligence without express language to that effect, finding the agreement and the circumstances at hand very dissimilar to those in *Tateosian*.

¶ 6. On appeal VSA again argues that — contrary to its plain language — the indemnity clause does not cover claims that stem from the City's negligence; thus, it contends the trial court erred in granting judgment as a matter of law to the City. VSA suggests that the language "claims . . . arising from or out of the presence of [VSA]" does not cover an accident that resulted because of the City's negligence. It argues that this language is ambiguous and does not express a clear intent that VSA would indemnify the City for such injuries, as required by the circumstances surrounding the agreement's formation. VSA relies on our decision in *Tateosian*, in which we held that a vague indemnification as to the "performance" of a contract did not indemnify the State against its own negligence without a clearer expression of the parties' intent. 2007 VT 136, ¶¶ 22-23. VSA argues that the purpose of the indemnification clause is merely to protect the City from claims by third parties caused by VSA's negligence and to protect the City from claims VSA might have against it caused by the City's willful acts.

¶ 7. VSA cannot escape the plain language of its agreement with the City. The indemnification clause allocated responsibility to VSA for any negligence claims directly arising out of VSA's event at the City's park and pool facility. The clause is expressly limited to causes of action arising out of the presence of VSA and its guests or employees and agents. It extended to any part of the park, not just the pool area, including sidewalks, streets, and approaches to the property. It barred actions by VSA against the

City, unless the City committed a willful act. The intent of the parties could not be more apparent — the City was willing to allow VSA to use Whites Park as long as it was completely insulated from liability due to VSA's use. Indeed, the agreement allocated responsibility to VSA to purchase insurance to cover such losses. As the trial court found, the most basic rule of contract construction — that the plain meaning of unambiguous language prevails — determines the outcome of this case because the provision's words are clear.

¶ 8. If we were to read the contract as VSA urges, the City gains nothing by this detailed clause in the contract. VSA is already liable for its own negligence; if VSA is not indemnifying the City for the City's negligence, the clause has no purpose except to allocate the burden of buying insurance. The trial court correctly concluded that VSA's desired reading of the clause would render it a nullity.

¶ 9. Contrary to VSA's argument, *Tateosian* does not compel a different result from that reached by the trial court. *Tateosian* arose out of an accident caused when a steel chain cover flew off a state snowplow truck and shattered the windshield of a car, causing injuries. After the car's occupants sued the State in negligence, the State sought indemnification from the contractor who had supplied and installed the steel chain cover for the state snowplow truck four years earlier. The indemnification clause in the standard form contract prepared by the State and applicable to any vendor doing business with the State specified that the contractor promised to defend the State against claims "arising as a result of the Contractor's performance of this contract." 2007 VT 136, ¶ 2. The State argued that the contractor's "act of selling the installed chain guard to the State was the 'performance' referenced in the contract, and the obligation to defend and indemnify encompassed any injury that resulted from the chain guard any time after the sale." *Id.* ¶ 16. We refused to stretch what we saw as an "extremely broad and vague" provision, one that raised more questions as to its scope than it answered, to cover the claimed indemnification, particularly where the State was in a much stronger bargaining position than the contractor. *Id.* ¶¶ 13, 17, 22. In the absence of the parties' clear intent, we resorted to a rule of construction that an indemnity provision covers the sole negligence of the indemnitee only if its language clearly expresses that intent. *Id.* ¶ 17. Subsequently, in *Stamp Tech, Inc. v. Lydall/*

*Thermal Acoustical, Inc.*, we emphasized that, following *Tateosian*, "[t]he issue in Vermont is not whether commercial parties may allocate liability among themselves, including indemnification of one party for its own negligence, but under what circumstances the agreement has to expressly disclose that fact." 2009 VT 91, ¶ 22, 186 Vt. 369, 987 A.2d 292.

¶ 10. The decision in *Tateosian* was grounded in the rule first announced by the United States Supreme Court in *United States v. Seckinger*, 397 U.S. 203 (1970). *Seckinger*, like *Tateosian*, involved government contractors and unequal bargaining power. *Id.* at 212. The *Seckinger* Court held that language in a contract between a contractor and the United States stating that the contractor shall be responsible for all damages to persons or property that shall occur as a result of the contractor's fault or negligence did not encompass the negligence of the United States. *Id.* at 208 n.9, 211. The Court concluded "that a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." *Id.* at 211. The Court noted that the "reluctance of courts to cast the burden of negligent actions upon those who were not actually at fault is particularly applicable to a situation in which there is a vast disparity in bargaining power and economic resources between the parties, such as exists between the United States and particular government contractors." *Id.* at 212. The Court further stated:

> if the United States expects to shift the ultimate responsibility for its negligence to its various contractors, the mutual intention of the parties to this effect should appear with clarity from the face of the contract. We can hardly say that this intention is manifested by the formulation incorporated into the present contract. . . . [T]he contractual language cannot readily be stretched to encompass the Government's negligence as well.

*Id.* at 212-13. According to the Court, the contract — which had only a clause stating that the contractor would be responsible for all damages resulting from its negligence — was so broad that it could not be read to indicate clearly that both parties intended the contractor to indemnify the United States for its own negligence. *Id.* Further, the Court relied on the rule that a contract's

language should be interpreted most strongly against the drafter, here, the United States. *Id.* at 216. The Court declined, however, to hold that a clause intended to indemnify for the indemnitee's own negligence "must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence." *Id.* at 213 n.17. It emphasized that contract interpretation remains an individualized process; the conclusion in a particular case must stem from the particular language used in conjunction with the background provided by other indications of the parties' intent. *Id.*

¶ 11. In *Tateosian*, 2007 VT 136, ¶ 23, we emphasized that our earlier holdings in *Furlon v. Haystack Mountain Ski Area, Inc.*, 136 Vt. 266, 388 A.2d 403 (1978), and *Hamelin*, in which we had reserved adoption of the express-disclosure rule, remained good law. In *Furlon*, an employee of a ski area was injured while fixing a ski lift. He sued the ski lift manufacturer and obtained a judgment against it based on its negligent design and manufacture of the ski lift. The employee then sued to collect the judgment from the ski area based on an indemnity agreement between the manufacturer of the ski lift and the ski area. The contract language stated: "The Buyer [ski area] assumes all legal responsibility for any personal injuries, deaths or property damage that may result from the erection or operation of the Chattels [ski lifts], and for this purpose, he shall take out the necessary insurance coverage at his expense." 136 Vt. at 268, 388 A.2d at 404 (quotation marks omitted). We declined to apply the express-disclosure rule, concluding that its aid as a tool of statutory construction was unnecessary in these circumstances. *Id.* at 269, 388 A.2d at 405. Not only was the provision's language unambiguous, but also applying the rule would nullify the purpose of the indemnity provision as there would be no reason to include the clause if it merely indemnified the indemnitee, the ski lift manufacturer, against liability for the negligent acts of the indemnitor, the ski area. *Id.* at 268-69, 388 A.2d at 405. Furthermore, there was no disparity in bargaining power between the parties, and the effect of the provision was to give the indemnitor the burden of purchasing insurance, an obligation that was also specifically created in the contract. *Id.* at 269-70, 388 A.2d at 405.

¶ 12. In *Hamelin*, we held that *Furlon* controlled and again saw no reason to apply the express-disclosure rule, concluding that commercial parties with equal bargaining power may allocate the risk of liability among themselves regardless of negligence. 167 Vt.

at 20-21, 702 A.2d at 89-90. A security guard working as an employee of a contractor brought a negligence action against the owner of the facility where he was posted after injuring himself on a faulty stair in the facility. The facility's owner brought a third-party action against the contractor, claiming that the contractor was required to indemnify it under their contract, even if the damaged stair was caused by the owner's own negligence. The contract at issue stated that the indemnitor, the contractor, agreed to:

> assume all risk of injury to persons, including himself, his employees and agents, and or damage to property in any manner resulting from or arising out of or in any manner connected with [the indemnitor's] operations hereunder, and [the indemnitor] agrees to indemnify and save [the indemnitee] harmless from any and all loss caused by or resulting from any such injury or damage.

*Id.* at 19, 702 A.2d at 88 (quotation marks omitted). The contractor argued that requiring it to indemnify the facility's owner for the owner's negligence offended the public policy underlying premises liability law: placing responsibility for maintenance of land on those who own or control supports the ultimate goal of reducing accidents. We determined, however, that the indemnity agreement directly contemplated the circumstances of the accident and "used expansive and unambiguous language to define [the indemnitor's] obligation." *Id.* at 20, 702 A.2d at 88. We concluded that, as in *Furlon*, the contract reflected an arm's-length business deal in which the parties were not marked by a disparity in bargaining power and instead had merely divided risks and responsibilities. *Id.* at 21, 702 A.2d at 89. We noted that the contract's requirement that the indemnitor purchase insurance reflected this. *Id.* Thus, the public policy concerns of unequal bargaining power, fairness, and risk-spreading were not present. *Id.* In addition, we noted that allocating liability to the indemnitor did not "significantly undermine" the indemnitee's incentives to keep its premises reasonably safe because it remained liable for injuries suffered by others unrelated to the contractor's presence. *Id.*

█ █ ¶ 13. The contract language and circumstances before us now are far removed from those at issue in *Tateosian* and are more closely related to *Hamelin*. Most importantly, the language

of the indemnity clause is unambiguous. Cf. *Batson-Cook Co. v. Indus. Steel Erectors*, 257 F.2d 410, 412 (5th Cir. 1958) (highlighting that intention to indemnify indemnitee against consequences of its own negligence must be "unequivocally expressed in the plainest of words"). Unlike the words "contractor's performance" in *Tateosian*, the indemnification language in the instant contract is deliberately broad enough to cover all injuries and damages that might occur — as a result of either party's negligence — to those present because of VSA's swim meet in Whites Park without being so broad as to lose meaning altogether. See *Hamelin*, 167 Vt. at 19, 702 A.2d at 88 ("When the contract language is clear, the intent of the parties is taken to be what the agreement declares."). Contrary to VSA's contention, this language does not "at most" provide indemnity for claims caused by VSA and its guests, rather than claims made by them. No interpretive gymnastics are required to conclude that the indemnification clause language covers an accident of a child playing on the playground at Whites Park while attending the swim meet, even if the accident resulted from the City's negligence, because her claims arose out of her presence in Whites Park for VSA's swim meet.

¶ 14. Moreover, the agreement was the result of an arm's-length deal between the City and VSA, in which the facts suggest equal bargaining power, another distinguishing feature from the facts in *Tateosian*, where the State sought to impose an ambiguous clause in a form contract that it had drafted. 2007 VT 136, ¶ 13. VSA gave the City representative a copy of an agreement used by VSA for its annual swim meet held at Dartmouth College in 2004. The City's representative used this agreement to prepare the agreement signed by VSA and the City, maintaining the Dartmouth agreement's wording for both the indemnification clause and the requirement that VSA purchase liability insurance and name the City as an additional insured party. Furthermore, there was no true disparity in bargaining power between the two contracting parties: not only did VSA bring a model contract to the City, but it also could have chosen to host its event elsewhere or to postpone the event. VSA had held its annual swim meet at other locations in previous years, and the City did not control all contracts with suitable local pool facilities. Lastly, the City has many other incentives to keep its playgrounds safe for children, so that allocating liability to VSA for claims arising out of the event it hosted at the park does not undermine other public policies related to premises liability.

¶ 15. As the trial court found, the terms and circumstances of the agreement between the City and VSA demonstrate that VSA contracted to indemnify the City for claims such as the ones resulting from this child's injury. We therefore hold that the trial court properly granted summary judgment to the City, denied it to VSA, and entered judgment for the City in the amount of $700,000 on the City's indemnity claim against VSA.

*Affirmed.*

¶ 16. **Reiber, C.J.,** dissenting. The exceedingly broad language of the indemnity provision in the parties' contract did not plainly and unambiguously express the parties' intent to have Vermont Swim Association (VSA) — a mere permittee hosting a two-day meet in a limited area of a city park — assume liability for injuries to anybody associated with the meet in all areas of the park for the City of Rutland's own negligence with respect to its nondelegable duty to maintain the park in a safe condition. For this reason, I would apply the rule we adopted in *Tateosian v. State* and reverse the superior court's grant of summary judgment in favor of the City. 2007 VT 136, 183 Vt. 57, 945 A.2d 833.

¶ 17. We recently adopted "the general rule that an indemnity clause covers the sole negligence of the indemnitee only where it clearly expresses that intent." *Id.* ¶ 23; see *Hollingsworth v. Chrysler Corp.*, 208 A.2d 61, 64 (Del. Super. Ct. 1965) ("Courts in nearly all jurisdictions which have faced this problem have applied the general rule that the indemnitor is not to be viewed as an insurer and have indicated that the indemnitee will not be protected against the consequences of his own negligence unless the agreement clearly and unequivocally requires it."). At least part of the rationale for this rule is that parties should expressly agree upon any departure from two fundamental tort principles: "(1) a party that causes loss should be held responsible for the damage therefrom, and (2) holding the responsible party liable serves as an incentive to prevent future occurrences of similar harm." *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 22, 702 A.2d 86, 90 (1997) (Gibson, J., dissenting) (citing W. Keeton, et al., Prosser and Keeton on the Law of Torts § 4, at 22, 25 (5th ed. 1984)).

¶ 18. In *Tateosian*, a contractor promised to indemnify and defend the State against claims "arising as a result of" the contractor's performance of the contract, which required the

contractor to supply and install metal covers on state snowplow trucks. 2007 VT 136, ¶ 2. We held that this indemnity provision did not require the contractor to defend the State with respect to a lawsuit claiming that the State's negligence and the manufacturer's design defect caused a cover to fly off a snowplow truck and crash through the windshield of the plaintiffs' car. *Id.* ¶ 23. We concluded that, if interpreted to include a claim based on the State's negligence, the language of the indemnity provision would be "extremely broad and vague" to the point of violating the principle that language accepting responsibility for another's negligence must be plain and unambiguous. *Id.* ¶ 17.

¶ 19. In adopting this "universally accepted" principle, *id.*, we quoted extensively from *Batson-Cook Co. v. Industrial Steel Erectors*, where the court held that broad but vague language assuming liability for incidents that "could arise out of, or result from, or be sustained, in connection with the performance of the work" was helpful in determining the areas in which an indemnity clause could be applied but not in establishing its application based on the legal or physical cause of the injury. 257 F.2d 410, 413 (5th Cir. 1958). In short, an indemnity provision must specifically and unambiguously express the parties' intent to make the idemnitor responsible for bodily injury or property damage caused by the indemnitee's negligence. *Id.* at 412; see, e.g., *Davis Constructors & Eng'rs, Inc. v. Hartford Accident & Indem. Co.*, 308 F. Supp. 792, 794-95 (M.D. Ala. 1968) (holding that nonnegligent subcontractor was required to indemnify negligent contractor where contract provision stated that subcontractor would indemnify contractor for injuries "arising out of the work undertaken by the sub-contractor . . . *whether or not due in whole or part to . . . omissions done or permitted by the contractor*"); cf. *Thompson v. Hi Tech Motor Sports, Inc.*, 2008 VT 15, ¶ 17, 183 Vt. 218, 945 A.2d 368 (explaining that "most effective way for parties to express an intention to release one party from liability flowing from that party's own negligence is. to provide explicitly that claims based in negligence are included in the release." (quotation omitted)).

¶ 20. The indemnity provision here does not satisfy this rigorous standard we adopted in *Tateosian*. The language in the provision is exceedingly broad and vague, particularly with respect to causation and when examined in the context of the circumstances of the contract. The provision states that permittee (VSA) must

indemnify and defend the City of Rutland and two businesses — the Midway Diner and Bowlerama — that are located outside of the park but apparently provide additional parking, as well as all of their officers, employees, and agents

> from all claims for bodily injury or property damage arising from or out of the presence of Permittee, including its employees, agents, representatives, guests and others present because of the event or Permittee's activities in or about Whites Park, including the entrances, lobbies and exits thereof, the sidewalks, streets and approaches adjoining the property or any portion of the property used by Permittee or any of the above stated.

A broad reading of the provision would require VSA to indemnify and defend the City and the specified businesses with respect to any bodily injury or property damage arising out of the presence of anyone "in or about" the park or businesses because of the swim meet, even if the injury or property damage were to occur on the sidewalks, streets and approaches to the pool, the park, or the businesses.

¶ 21. The provision contains no statement as to causation and in particular no express statement of the parties' intent to require VSA to indemnify and defend the City for the City's own negligence, as required in *Tateosian*. Hence, as in *Batson-Cook*, while the broad language of the provision may generally identify the provision's areas of application, it does not clarify the provision's applicability with respect to the parties' relative liability depending on the legal or physical causes of any injury resulting from the limited nature and scope of the permitted use of the property. Under the circumstances, construing the vague language of the provision so broadly as to cover the City's nondelegable duty to maintain its park in a safe condition violates our holding in *Tateosian*.

¶ 22. The majority attempts to distinguish *Tateosian* on grounds that the language in the instant indemnification provision is even more broad than the one in *Tateosian*. But, as we held in *Tateosian*, it is the very breadth of the provision that counsels against applying it to specific situations involving the indemnitee's negligence — absent language expressly stating the parties' intent to require the indemnitor to indemnify and defend the indemnitee in such situations. 2007 VT 136, ¶ 17.

¶ 23. I realize that "[t]he issue in Vermont is not whether commercial parties may allocate liability among themselves," but rather "under what circumstances the agreement has to expressly disclose that fact." *Stamp Tech, Inc. v. Lydall/Thermal Acoustical, Inc.*, 2009 VT 91, ¶ 22, 186 Vt. 369, 987 A.2d 292. In my view, the circumstances of this case warrant application of the general rule requiring that the parties expressly state their intent to have the idemnitor (VSA) indemnify and defend the idemnitee (the City of Rutland) for bodily injury or property damage resulting from the indemnitee's own negligence.

¶ 24. I first note that VSA is not a commercial entity but rather a volunteer, nonprofit organization that administers the championship meet for summer swim teams in Vermont and awards scholarships to Vermont high school senior swimmers. More importantly, while the parties' contract allowed VSA and its guests — like other members of the general public — to use the parking lot and other areas of Whites Park, as well as the parking lots in nearby businesses, in essence it granted VSA a permit for exclusive use of only Whites Pool for a limited duration of time each day for two days to hold a swim meet. The primary contractual clause addressing use of the park facilities granted "Permittee the use of 'Whites Pool' to conduct activities related to the *Vermont Swimming Association Championship* which shall mean the use of the pool, pool deck, seating area, Colorado timing system, and locker rooms." Thus, although the contract allowed VSA to set up a concession stand outside the pool area, the pool area itself was the only place where VSA was permitted exclusive use to hold its meet over the two-day period. Indeed, the contractual provision dealing with consideration for use of the pool states that VSA agrees to pay the City $6,000 for the rental of "Whites Pool."

¶ 25. In the context of the City granting a nonprofit association a permit for exclusive use of a city park pool to hold a swim meet over two days, we should apply the general rule that, absent specific language stating such intent, the parties did not intend the broad and vague language of their indemnity clause to require VSA to assume all liability for the City's negligence in all areas in and about Whites Park for any injury to anyone connected to the event. In such circumstances, the City must make explicit its intent to require VSA to indemnify and defend the City for its own negligence with regard to its nondelegable duty to maintain its park in a safe condition.

¶ 26. Other provisions of the contract demonstrate that the parties knew how to be explicit about responsibility for each other's negligence or willful conduct. For example, in the indemnification clause, the parties agreed that VSA itself would not have a cause of action against the City for its permitted uses of the park, except when the injury or property damage resulted from the City's willful acts. The agreement also includes a provision that makes VSA liable for all damages to Whites Pool "arising out of Permittee's use of the facility, except for damage caused by the negligence of Rutland Recreation & Parks Department." If the majority is correct that the broad language in the indemnification clause presumes VSA's duty to indemnify the City for its own negligence, then the above-quoted damages provision is mere surplusage and a nullity. Indeed, one can only wonder why the parties would require the City to assume liability for damages resulting from its own negligence in the pool area, but not in other areas of the park outside the exclusive permitted area. In short, the parties knew how to be explicit when establishing liability for each other's negligence but did not do so with respect to the circumstances here. This is another reason why the general rule should be applied here.

¶ 27. The majority states, however, that if we do not construe the indemnification provision to cover all claims for injuries caused by the City's own negligence, the provision would have no meaning. Cf. *Furlon v. Haystack Mountain Ski Area, Inc.*, 136 Vt 266, 268-69, 388 A.2d 403, 405 (1978) (stating that indemnity clause in that case would be rendered "a nullity" if we were to apply general rule that indemnity provisions should not protect indemnitees from their own negligence unless parties expressly state that intent in provision). I disagree. In *Furlon*, a contract between a Swiss ski-lift manufacturer and a Vermont ski resort that purchased the lift required the resort to assume all legal responsibility for any injury resulting from erection or operation of the lift. After an injured resort employee sued the manufacturer for negligent design and obtained a default judgment, we held that the employee could execute the judgment against the ski resort pursuant to the contract between the resort and the manufacturer. *Id.* at 270, 388 A.2d at 405. We concluded that the parties could not have intended that the indemnity clause required indemnification only for injuries caused by the resort's negligence, and not for those caused by the manufacturer's negligence,

because the manufacturer owed no duty with respect to a negligent act or omission committed by the resort. *Id.* at 268-69, 388 A.2d at 405. We noted that if the parties had intended to make the ski resort liable only for its own conduct, "there would have been no reason to include the subject clause." *Id.* at 269, 388 A.2d at 405.

¶ 28. The situation here is not comparable. Unlike the Swiss ski-lift manufacturer in *Furlon*, in this case the indemnitee (the City) granted VSA a permit for exclusive use of part of its park for a limited period of time, but, in doing so, did not absolve itself of its duty to maintain the park in a safe condition even during the two-day swim meet. Even if we were to hold that the indemnification provision does not apply to protect the City from liability for its own negligence concerning the area of the park outside of the pool that is the subject of this lawsuit, the provision would not be "a nullity" because it protected the City from liability for injuries or property damage resulting from accidents on its property not caused by the City's negligence.

¶ 29. Moreover, the indemnification clause required VSA not only to indemnify, but also to defend, the City in the event that an accident not involving the City's negligence resulted in a lawsuit against the City. For this reason alone, the clause was not a nullity even if we assume that indemnity for the City's own negligence was not required. In fact, the practical difficulties associated with the majority's decision requiring VSA to defend against a lawsuit grounded on the City's negligence — for example, obtaining records from the employees of the negligent party — is one of the reasons that courts have required parties to explicitly state their intent to require the indemnitor to assume the burden of defending a lawsuit grounded on the indemnitee's negligence. For the same reason, general liability insurance policies include cooperation clauses in indemnity agreements with insureds.

¶ 30. The majority states that this case is more like *Hamelin* than *Tateosian*. I agree that *Hamelin*, a 3-2 decision, is parallel to this case in some ways, but I do not agree that it should be controlling in light of our later decision in *Tateosian*, which should apply here. Unlike this case, *Hamelin* involved a contract between two commercial parties. The parties' contract required one business to provide security services at the other business's paper facility. The contract required the security company to assume all

risk of bodily injury and property damage "resulting from or arising out of or in any manner connected with [the security company's] operations." *Hamelin*, 167 Vt. at 19, 702 A.2d at 88 (quotation marks omitted). A security guard on his regular rounds who was injured when he fell through a wooden staircase at the facility claimed that his injury resulted from negligent inspection and maintenance by the indemnitee. We ultimately held that the parties' contract made the security company liable for the damages resulting from the accident. *Id.* at 20, 702 A.2d at 88. We concluded that *Furlon* controlled the case, in part because the case involved an arm's-length business deal between corporate parties. *Id.* at 21, 702 A.2d at 89.

¶ 31. But unlike the instant case, in *Hamelin* the accident occurred while the security company was conducting its regular "operations" in an area of the premises in which it had a contractual duty with the indemnitee to conduct those operations. This case, in contrast, is a limited agreement for use of the property and concerns an accident outside the area in which the contract gave VSA the exclusive right to use the City's facility. Here, given all of the circumstances, we should apply the general, universally accepted rule that indemnity for another's negligence will not be presumed absent explicit language to that effect.