*Schwarzkopf v. Secor*, 256-9-18 Bncv (Barra, J., Dec. 28, 2018)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT
Bennington Unit

CIVIL DIVISION
Docket No. 256-9-18 Bncv

---

Schwarzkopf et al vs. Secor et al

---

## ENTRY REGARDING MOTION

Count 1, Breach of Fiduciary Duty (256-9-18 Bncv)
Count 2, Breach of Fiduciary Duty (256-9-18 Bncv)
Count 3, Breach of Contract (256-9-18 Bncv)
Count 4, Breach of Contract (256-9-18 Bncv)
Count 5, Breach of Contract (256-9-18 Bncv)
Count 6, Breach of Contract (256-9-18 Bncv)

Title:      Motion dismiss counterclaim (Motion 1)
Filer:      Donald S. Schwarzkopf
Attorney:   David E. Bond
Filed Date: November 2, 2018

Response filed on 11/19/2018 by Attorney James M. Cooley for Defendant MS&K, Inc.
Response filed on 11/28/2018 by Attorney David E. Bond for Plaintiff Margaret O'Neil Schwarzkopf
Response filed on 12/10/2018 by Attorney James M. Cooley for Defendant MS&K, Inc.

### Order Regarding Plaintiffs' Motion to Dismiss Counterclaim

This matter is before the Court on Plaintiffs' Motion to Dismiss the Counterclaim. For the reasons set forth below, the motion is **GRANTED** and Defendants' counterclaim is accordingly **DISMISSED**.

### FINDINGS OF FACT

The following findings of fact are limited to those necessary to rule on the Motion to Dismiss the Counterclaim. Findings of fact on the underlying claims will be issued when appropriate.

On April 18, 2008, Plaintiffs entered into a contract for engineering services with Defendants in connection with the construction of Plaintiffs' house (hereinafter MSK contract). In consideration for an estimated $2,000 to $2,500, Defendants contracted to provide surveying services and liaison with government officials on wetlands encroachment and a sewer crossing. The contract provides "this estimate is based on past experience and all invoicing will be on

time and material basis at the following rates: . . . 6. Subcontractors/Materials: Actual invoice plus 10%." The contract also contains a hold-harmless provision, which is quoted verbatim despite numerous grammatical errors: "Also Client and Owner will hold MSK and it's employees/officers harmless to any third party litigations arising from work contained in this contract performed by its subcontractors and they agree to pay any legal fees or damages costs."

Plaintiffs subsequently entered into a different contract with a third-party, Jim Sheldon Excavating & Concrete, for concrete work on the site (hereinafter Sheldon contract). According to Plaintiffs—the Court here makes no finding on the matter—"[p]ursuant to the Sheldon Contract, Mr. Secor, acting in his capacity as principal of MSK, directly supervised the work in the role of 'Engineer.'" Discord thereafter arose between Plaintiffs and Sheldon, culminating in a separate court action. Plaintiffs have now brought suit against Defendants for their supervisory role under the Sheldon contract. Defendants have filed a counterclaim, maintaining that Plaintiffs have breached their duty under the MSK contract to "hold MSK and its employees and officers harmless from any litigation with third parties arising from MSK's work." Plaintiffs then filed a Motion to Dismiss the Counterclaim under V.R.C.P. 12(b)(6), attaching the MSK contract and arguing that the hold-harmless provision, by its own terms, only applies to Defendants' subcontractors and Sheldon was not Defendants' subcontractor. Defendants counter that the provision instead applies to Plaintiff's subcontractors.

## CONCLUSIONS OF LAW

"In determining whether a complaint can survive a motion to dismiss under Rule 12(b)(6), courts must take the factual allegations in the complaint as true, and consider whether 'it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief.'" *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1, 5–6 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 317). Motions to dismiss for failure to state a claim are disfavored and rarely granted. *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554, 557.

"[W]hen the complaint relies upon a document . . . such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, 186 Vt. 605, 609 n. 4 (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that in evaluating a motion to dismiss, courts must consider the complaint and "documents incorporated into the complaint by reference"); *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n. 3 (2d Cir. 2001) (holding that it was "appropriate for the district court to refer to the documents attached to the motion to dismiss since the documents were referred to in the complaint").

Here, Defendants not only reference the MSK contract in their counterclaim, the counterclaim relies singularly on that document. Accordingly, the Court examined the language of that contract and its hold-harmless provision. Having done so, it appears beyond doubt that there exist no facts or circumstances that would entitle Defendants to relief. This is thus one of the rare cases in which it is appropriate to grant a motion to dismiss for failure to state a claim.

In interpreting a contract, the Court's "goal is to give effect to the intent of the parties as it is expressed in their writing." *Rounds v. Malletts Bay Club, Inc.*, 2016 VT 102, ¶ 16, 203 Vt. 473, 479 (quoting *Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, 190 Vt. 106, 109). When the contract language is unambiguous, its words are taken to represent the parties' intent and the plain meaning of this language governs its interpretation. *Southwick*, 2011 VT 53, ¶ 4. Whether the language of a contract is ambiguous is a matter of law, as is the interpretation of an unambiguous contract. *O'Brien Bros.' P'ship, LLP v. Plociennik*, 2007 VT 105, ¶ 9, 182 Vt. 409, 414. "A contract term is ambiguous if 'reasonable people could differ as to its interpretation.'" *Id.* (quoting *Trustees of Net Realty Holding Tr. v. AVCO Fin. Servs. of Barre, Inc.*, 144 Vt. 243, 248 (1984)). "'If a contract, though inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.'" *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 580–81 (1988) (quoting *Allstate Ins. Co. v. Goldwater*, 163 Mich. App. 646, 648, 415 N.W.2d 2, 4 (1987)). Some evidence regarding the circumstances surrounding the making of the contract, as well as the object, nature, and subject matter of the writing, may be considered to determine whether the provisions are ambiguous. *Id.* at 578. However, "those circumstances 'may not be used to vary the terms of an unambiguous writing.'" *O'Brien Bros.'*, 2007 VT 105, ¶ 9 (quoting *Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 8, 177 Vt. 70, 74). "If the terms of the contract are plain and unambiguous, 'they will be given effect and enforced in accordance with their language.'" *Id.* (quoting *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 150 (1993)).

The MSK contract is not ambiguous. To be sure, the contract is not a paragon of the English language, but it admits of but one reading. The hold-harmless provision states: "Also Client and Owner will hold *MSK and it's employees/officers* harmless to any third party litigations *arising from work contained in this contract* performed by *its subcontractors* and *they agree* to pay any legal fees or damages costs." (emphasis added). First, the provision clearly applies only to litigation arising from work contained in the contract—surveying services and liaison with government officials on wetlands encroachment and a sewer crossing. Second, it is clear that "its subcontractors" refers to MSK's subcontractors—not client and owner's. The choice of pronouns reveals an intent to use "its" for the corporate entity and "they" for the natural persons. The provision first references "MSK and it's [sic] employees/officers." It then tracks that language by referencing "its subcontractors." Even more tellingly, the provision goes on to use the pronoun "they," clearly referring to natural persons—client and owner. Moreover, looking at the structure of the sentence leads to the same conclusion: "*Client and Owner* will hold . . . and *they* agree to pay . . . ." "*MSK and it's employees/officers* . . . harmless to any third party litigations arising from work contained in this contract performed by *its subcontractors* . . . ." Defendants in effect ask the Court to read the words "their subcontractors" when the contract says "its subcontractors." The Court will not rewrite the contract. See *SKI, Ltd. v. Mountainside Properties, Inc.*, 2015 VT 33, ¶ 26, 198 Vt. 384, 394 ("We will not rewrite the contract, nor graft conditions onto an unambiguous contractual provision merely because the passage of time and the course of development have led the parties to positions they had not anticipated."). Reasonable people could not differ as to this provision's interpretation.

The circumstances surrounding the making of the contract, and the object, nature, and subject matter of the writing, also lead to the inescapable conclusion that the contract is not ambiguous. This discussion is entirely supplementary, as the Court has already established that

the contract language is unambiguous; thus, its words are taken to represent the parties' intent and the plain meaning of this language governs its interpretation. *Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, 190 Vt. 106, 109. These circumstances may not be used to vary the terms of an unambiguous contract. *O'Brien Bros.' P'ship, LLP v. Plociennik*, 2007 VT 105, ¶ 9, 182 Vt. 409, 414.

First, Defendants submit that when the contract was executed, Plaintiffs had hired various other contractors to work on the site and that Defendants had no need or intention to hire subcontractors. Under these circumstances, Defendants submit, a provision spelling out that MSK would not be responsible for the Plaintiffs' other contractors makes "perfect sense." However, Defendants do not explain why or how they would be liable for the work of other contractors with whom they had no connection, and over whom they had no supervisory authority, especially when Defendants' work under the contract was limited to surveying and government liaison. Moreover, even a cursory reading of the MSK contract reveals that the contract contemplates MSK hiring subcontractors. The contract provides "this estimate is based on past experience and all invoicing will be on time and material basis at the following rates: . . . 6. Subcontractors/Materials: Actual invoice plus 10%." Additionally, if Defendants' intention was to insulate themselves from Plaintiffs' other contractors, why would they use the word subcontractors? Defendants' argument is without merit and creates no ambiguity in the contract.

Second, Defendants argue that a provision by which Plaintiffs would agree to hold MSK harmless for claims arising from the work of MSK's own subcontractors makes "absolutely no sense" because any suit between Plaintiffs and MSK's subcontractors would require, as a matter of law, legal action against MSK under the economic loss rule. Even assuming that the contract's language was chosen with the economic loss rule in mind, Defendants fail to recognize that the economic loss rule does not bar all claims by a homeowner against a subcontractor.

The economic loss rule "'prohibits recovery in tort for purely economic losses'" and serves to maintain a distinction between contract and tort law. *Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322, 327 (quoting *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513, 524). The Supreme Court has explained:

> In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

*EBWS, LLC*, 2007 VT 37, ¶ 30 (internal citations and quotations omitted). Accordingly, the economic loss rule would not bar a homeowner's negligence action against a subcontractor involving unanticipated physical injury. It is entirely possible that Defendants intended the

hold-harmless provision to insulate them from such suits, as well as any others that can fall within the provision's language.[1]

Moreover, Defendants fail to recognize that there are exceptions to the economic loss rule, such as the "professional services and/or special relationship" exception. See, e.g., *Long Trail House Condo. Ass'n*, 2012 VT 80, ¶ 12. The Supreme Court has held that "[p]urely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contract obligations." *EBWS, LLC*, 2007 VT 37, ¶ 31; see also *Long Trail House Condo. Ass'n*, 2012 VT 80, ¶ 13 (holding that privity, or lack thereof, is not the determining factor as to whether the economic loss rule applies to bar tort claims and that exceptions to the economic loss rule turn on the existence of a duty separate and apart from a contractual duty). Accordingly, not every suit between Plaintiffs and MSK's subcontractors would require, as a matter of law, legal action against MSK under the economic loss rule. Defendants' second argument relating to circumstances surrounding the making of the contract does not create any ambiguity in the contract.

Defendants' remaining arguments are all premised on the proposition that the contract is ambiguous. Because the Court has held that the contract is not ambiguous, these arguments necessarily fail.

Having determined that the terms of the contract are unambiguous, the Court's remaining task is to give them effect. See *O'Brien Bros.' P'ship, LLP v. Plociennik*, 2007 VT 105, ¶ 9, 182 Vt. 409, 414. The terms of the hold-harmless provision are that Plaintiffs will hold MSK and its employees/officers harmless in any third-party litigations 1) arising from work contained in the contract, and 2) performed by MSK's subcontractors. Neither the first nor second condition is present here.[2]

First, the work contained in the MSK contract was to provide surveying services and liaison with government officials on wetlands encroachment and a sewer crossing. Plaintiffs have no quarrel with Defendants over the latter's work under the MSK contract. Their claims are based on Defendants' obligations under the Sheldon contract. Thus, neither the Sheldon litigation nor this litigation arise from work contained in the MSK contract and the hold-harmless provision does not apply.

Second, Jim Sheldon Excavating & Concrete was not MSK's subcontractor. Nor do Defendants claim that it was. Thus, again, neither the Sheldon litigation nor this litigation arise from work performed by MSK's subcontractors. Therefore, the hold-harmless provision also does not apply for this reason.

---

[1] The hold-harmless provision's language ("any third party litigations arising from work contained in this contract performed by its subcontractors") is not to the contrary. It can, in all fairness, be said that a subcontracted surveyor's negligence that causes physical injury arises from work contained in the contract. After all, such a surveyor would not be on site but for the work he/she is performing under the contract.

[2] This is also not a third-party litigation, as provided in the hold-harmless provision. However, Plaintiffs' damages claims are linked to their separate litigation with Sheldon. The Court makes no ruling on this issue without further findings of fact on Plaintiffs' underlying claims.

Defendants' reliance on the MSK contract's hold-harmless provision is entirely misplaced.  Beyond doubt there exist no facts or circumstances that would entitle Defendants to relief.  It is thus appropriate to grant Plaintiff's motion to dismiss for failure to state a claim.

**ORDER**

For the preceding reasons, Plaintiffs' Motion to Dismiss the Counterclaim is **GRANTED**. Defendants' counterclaim is accordingly **DISMISSED.**

**The motion is GRANTED.**

_____

**David Barra**
**Superior Court Judge**

Notifications:
David E. Bond (ERN 3647), Attorney for Plaintiff Donald S. Schwarzkopf
David E. Bond (ERN 3647), Attorney for Plaintiff Margaret O'Neil Schwarzkopf
James M. Cooley (ERN 3666), Attorney for Defendant James Secor
James M. Cooley (ERN 3666), Attorney for Defendant MS&K, Inc.