VERMONT SUPERIOR COURT
Franklin Unit
17 Church Street
St. Albans VT  05478
802-524-7993
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-05026

| David Smith v. Eric Benware |
| --- |

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss  (Motion: 6)
Filer:        Eric J. Benware
Filed Date:   April 11, 2025

The Court previously issued a writ of possession in this case on April 2, 2025 due to Defendant's failure to make a rent escrow payment.  Defendant filed a motion to dismiss this ejectment action on April 11, 2025.  Plaintiff filed a response on April 21, 2025.  The Court stayed the writ on April 15, 2025 to consider this motion to dismiss.  As explained below, the Court grants the motion to dismiss.  The writ of possession is vacated.

The motion to dismiss is premised on the argument that the agreement between the parties involves is a defective rent-to-own agreement of a mobile home under 9 V.S.A. § 2602(e).  According to Defendant, the agreement does not satisfy the requirements of section 2602(e)(2).  Defendant asks the Court to find that because the agreement is defective, he must be considered a tenant, and the Residential Rental Agreements Act ("RRAA") applies to this case, see *id.*, § 2602(e)(3).  On that basis, Defendant then argues that the Court never should have issued a rent escrow order and this case should be dismissed because Plaintiff has failed to comply with the procedural requirements of the RRAA prior to filing this case.

On August 29, 2024, the parties executed what appears on its face to be a rent-to-own a mobile home agreement.  The agreement identifies itself variably as a "Rent to Own-Mobile Home" and a "Lease Agreement."  And although the title of an instrument is not necessarily determinative of its character, see *Prue v. Royer*, 2013 VT 12, ¶ 20, 193 Vt. 267, this agreement is ostensibly what it purports to be—a rent-to-own mobile home agreement, see Compl., at 6–11. See also *Southwick v. City of Rutland*, 2011 VT 53, ¶ 4, 190 Vt. 106 (when a contract is unambiguous, the plain language of the contract governs its interpretation).

The Vermont Supreme Court has fleshed out the characteristics of such an agreement in the following terms:

> A lease option to purchase is an agreement by which one binds himself to sell and convey to another party certain property at a stipulated price within a designated time, leaving it in the discretion of such other party to take and pay for the property. It is a unilateral contract: The optionor is bound that the offer shall be kept open and available in accordance with its terms, but its acceptance rests wholly in the discretion of the optionee, and there is no obligation upon the latter with regard to it. Besides its unilateral nature, … the lease payments are not … applied on the purchase price.

*Prue v. Royer*, 2013 VT 12, ¶¶ 23–24 (citations and internal quotations marks omitted). In simple terms, the key elements of a rent-to-own agreement are that (1) tenant/potential buyer has the option to buy at a specified price within a particular time period, but the decision to buy is solely tenant's, and (2) the lease payments are not applied to the purchase price. This is consistent with the language of the mobile home rent-to-own statute, which requires an agreement where tenant/potential buyer has agreed to pay consideration in one or more installments to the owner of a mobile home for the right to use or occupy the home, see 9 V.S.A. § 2602(e)(1)(A), and upon full compliance with the terms of the agreement, tenant has the option of becoming the owner of the home, *id.*, § 2602(e)(1)(B).

Here, the contract is not as clear as it could be in certain aspects, but the option to buy is laid out explicitly as an option: it is exercisable by Defendant within a specific period and at a specific price, Plaintiff was required to keep the option open, and Plaintiff had no control over Defendant's decision to exercise the option. In addition, lease payments were not automatically credited toward the purchase price – they could be in certain instances, but only after Defendant exercised the option. The Court therefore concludes that the Agreement here is a valid rent-to-own mobile home agreement.

As stated above, underlying Defendant's arguments in the motion to dismiss is his contention that this agreement fails to comply with the requirements of 9 V.S.A. § 2601(e)(2), section 2601(e)(3) and as a result, his tenancy subject to the RRAA.

The key question here is what happens when there is a rent-to-own agreement but there is a breach of that agreement before the option to purchase was exercised or completed. As noted above, after full compliance with the terms of a rent-to-own agreement, Defendant here has *the option* of becoming the owner of the home. 9 V.S.A. § 2602(e)(1)(B). Subdivision (2), on which Defendant relies, deals with the requirements to consummate a sale under rent-to-own agreements. *Id.*, § 2602(e)(2). It dictates that under a rent-to-own arrangement, ownership does not transfer *unless and until*, there is a written retail installment contract compliant with requirements set out in Chapter 59 of this title, *id.*, § 2602(e)(2)(A), *and unless and until* a mobile home uniform bill of sale transferring the mobile

home from the seller to the buyer is properly completed, endorsed, executed, and filed, *id.*, §
2602(e)(2)(B).

In this respect, Plaintiff is correct that the parties were not yet at the stage where all
of the section 2602(e)(2) obligations had come into effect. If the rent-to-own agreement is
in compliance with the sale steps when it reaches the sale stage, it is not subject to the
RRAA. *Id.*, § 2602(e)(3). Indeed, subdivision (2) ("Requirements to consummate sale under
rent-to-own agreements") clearly indicates that rent-to-own, as the name suggests, is a two-
part arrangement wherein tenancy (the rent part) can at the option of the tenant change into
ownership (the own part). The sale part, however, as subdivision (2) indicates, needs to be
consummated.

In reviewing the statute in detail, the only reasonable interpretation is that before the
sale part of the arrangement is consummated, the RRAA applies. In other words, sections
2602(e)(3) and (4) only begin to operate at the sale stage of the arrangement. Before such
time, however, the arrangement is a tenancy subject to the RRAA. See *Pitman v. Sanditen*, 626
S.W.2d 496, 498 (Tex. 1981) ("[A] tenant under a lease containing an option to purchase
exercises the option, a binding, bilateral contract is formed. The relation of landlord and
tenant ceases and that of vendor and purchaser arises.").

Based on this analysis, Defendant has been renting and is considered a tenant *unless
and until* he exercises the option to purchase. As a result, the RRAA currently applies. Since
the parties are not at the sale stage, the sale formalities are irrelevant to its analysis.

In his opposition, Plaintiff argued that the Agreement falls outside the scope of the
Mobile Home Act because it involves the sale of the home and "10 acres of land." See
Compl., at 10. Plaintiff argues, section 2602(e)(2) explicitly excludes the application of the
RRAA to the Agreement because it does not apply to agreements to purchase a mobile
home financed as residential real estate. To further lend support he states that the home
here has been permanently sited. See 9 V.S.A. § 2601(d).

The Court disagrees. If that is what the parties intended, their contract is woefully
inadequate. The only reference to this agreement involving land comes on the last page in
paragraph 27 titled "End Statement," where it states it is an agreement "to rent to own a
single wide Mobile Home on 10 acres of land under the conditions within this contract."
This lone, vague reference to "10 acres of land" is simply not enough to establish that the
Agreement will be sold or financed as residential real estate. For starters, the Agreement
includes no description of the land purported to be sold. See *Stewart v. Thompson*, 3 Vt. 255,
257 (1831) ("The instrument is ineffectual, because it contains no description of estate;
which is necessary in order to determine what title, or interest, passes by the deed.").

Because the Court concludes that this Agreement is subject to the RRAA, the case
must be dismissed. There was no valid notice to vacate here. The October 20, 2024, notice
does not state the amount of rent required to redeem the tenancy or Defendant's right to

redeem. *See* 9 V.S.A. § 4467(a).  It also does not specifically state the termination date.  *Id.*, § 4467(f).  And although the later notices attached to the Complaint appear to specify redemption amounts ("$1008.00" and "$2259.00") and one of them specifies the termination date ("end of April"), an ejectment action must be commenced "not later than 60 days from the termination date set forth in the notice." 9 V.S.A. § 4467(k).  The October 20, 2024, notice is facially invalid, and the earlier notices can be only reasonably interpreted to be from 2016 ("[Y]ou have until the 15th of October 2016 to have paid in full the agreed amount[.]") and 2017 ("[Y]ou have until the 15th of April 2017 to have paid in full the amount[.]"), respectively.   No eviction matter may be commenced until a valid notice to terminate has been provided to a tenant with the appropriate information and deadlines.

Order

The motion to dismiss is *granted*.  The rent escrow order and writ of possession are vacated.  The matter is dismissed without prejudice.

Electronically signed on April 28, 2025, pursuant to V.R.E.F. 9(d).

Navah C. Spero
Superior Court Judge