2015 VT 66











Hemond v. Frontier
Communications, Inc., Citizens Communications Co., Citizens Energy Services
(2014-116)

 

2015 VT 66

 

[Filed 17-Apr-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 66
 
 


 


 
 
 No. 2014-116
 
 


 


 
 
 Michael Hemond and Tracey Hemond
 
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
      v.
 
 
 On Appeal from
 
 
 
 
  
 
 
 Superior Court, Chittenden Unit,
 
 
 
 
 Frontier Communications of America,
 Inc., 
 f/k/a Citizens Communications Company, 
 d/b/a Citizens Energy Services
  
      v.
  
 Navigant Consulting, Inc.
  
 
 
 Civil Division
  
 October Term, 2014
 
 
 
 
 Dennis
 R. Pearson, J.
 
 
 
 
  
 
 


Robert S. DiPalma of Paul Frank + Collins P.C., Burlington,
for Cross-Plaintiff/

  Cross-Defendant/Appellee.

 

Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland,
and Henry P. Sorett of Brickley Sears

  & Sorett, Boston, Massachusetts, for Defendant-Appellant.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund
and Robinson, JJ., and Griffin, Supr. J., 

                    
Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   This case involves an indemnity dispute
between two defendants in a suit arising after plaintiff Michael Hemond
suffered a tragic electrocution injury while working on an electrical
switch.  Defendant Frontier Communications of America, Inc.,[1] who owned the electrical equipment on
which the accident took place, claimed implied indemnity from Navigant
Consulting Group, Inc., a contractor.  Navigant cross-claimed for
indemnification from Frontier based on express statements in the parties’
contract.  The court granted summary judgment to Navigant on both
Frontier’s claim for implied indemnification and Navigant’s claim of express
indemnification against Frontier.  Frontier appeals, arguing that the
court erred in concluding that the undisputed facts demonstrated that Frontier
failed to meet the requirements for implied indemnification and that a valid
express indemnification agreement existed between the parties.  We affirm.

¶ 2.            
The relationship between Frontier and Navigant began in 2001 when
Frontier was planning an upgrade for the Richford substation and hired Navigant
as a consultant to assist in obtaining a certificate of public good
(CPG).  Navigant’s employee, Eugene Shlatz, provided testimony to the
Vermont Public Service Board (PSB) that the upgrade would enable Frontier “to
provide more stable and reliable service to its customers.”  The upgrade
plan, created by Frontier’s own electrical engineer, included removing an oil
break circuit at that location and installing a new group-operated air break
switch, which included switches 14E and 14W.[2]  Frontier selected the air break
switch.

¶ 3.            
The switch was not completely installed and was not grounded by the time
plaintiff Michael Hemond was directed to open it in September 2006 to
de-energize a portion of the line and allow work to be performed.  When
plaintiff Michael Hemond opened Switch 14E, an electrical arc formed across the
support structure, and electrocuted plaintiff, causing permanent and painful
injuries.[3] 


¶ 4.            
Plaintiffs brought suit against several defendants, including Frontier
and Navigant.  Plaintiffs alleged negligence in the design, manufacture,
installation, and construction of the Richford substation, and of the switch in
particular.  

¶ 5.            
In February 2011, following mediation, plaintiffs entered a settlement
with all defendants, except Frontier.  Frontier then filed a cross-claim
against the other codefendants, including Navigant, claiming that it was
entitled to implied indemnification from them.  Shortly thereafter,
Navigant filed a claim against Frontier, asserting that it was entitled to
contractual indemnity from Frontier.  

¶ 6.            
Both defendants filed motions for summary judgment.  In separate
orders, the trial court granted summary judgment to Navigant on Frontier’s
claim for implied indemnification, and on Navigant’s claim for express
indemnification.[4] 
Frontier appeals both summary judgment decisions.

¶ 7.            
Summary judgment is appropriate where “the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law.”  V.R.C.P. 56(a).  On appeal from a summary
judgment decision, this Court applies the same standard as the trial
court.  White v. Quechee Lakes Landowners’ Ass’n, Inc., 170 Vt. 25,
28, 742 A.2d 734, 736 (1999).  “We regard all allegations made in
opposition to summary judgment as true, if supported by affidavits or other
evidence.”  Knisely v. Cent. Vt. Hosp., 171 Vt. 644, 645, 769 A.2d
5, 6 (2000) (mem.).  

¶ 8.            
The obligation to indemnify, which is the subject of these summary
judgment decisions, can arise in two ways: a party can expressly agree to
indemnify another, or the right to indemnity may be implied where
“circumstances require the law to imply such an undertaking.”  City of
Burlington v. Arthur J. Gallagher & Co., 173 Vt. 484, 486, 788 A.2d 18,
21 (2001).  Here both concepts are at issue.  Frontier alleged that
it was entitled to implied indemnification because it claimed that Navigant was
responsible for advising on the suitability of the electrical system and its
negligence in failing to advise against use of Switch 14E caused the dangerous
condition.  Navigant cross-claimed for express indemnification under a
provision of the parties’ contract.  We consider the court’s decisions on
each claim in turn.

I.
Implied Indemnification

¶ 9.            
First, we address Frontier’s claim that the court erred in granting
summary judgment to Navigant on Frontier’s claim for implied
indemnification.  Indemnity is “an exception to our longstanding rule
barring contribution among joint tortfeasors.”  White, 170 Vt. at
28, 742 A.2d at 736.  Therefore, indemnity is “imputed only when equitable
considerations concerning the nature of the parties’ obligations to one another
or the significant difference in the kind or quality of their conduct
demonstrate that it is fair to shift the entire loss occasioned by the injury
from one party to another.”  Id. at 29, 742 A.2d at 737 (citing W.
Keeton, Prosser and Keeton on the Law of Torts § 51, at 344 (5th ed.
1984)).  We have acknowledged the difficulty of articulating a general
rule on implied indemnity, but have explained that usually it will apply only
when the party seeking indemnity is vicariously or secondarily liable to the
third person because of a legal relationship with the third person or because
of the party’s failure to discover a dangerous condition caused by the
indemnifying party, “who is primarily responsible for the condition.”  Id.


¶ 10.        
Applying this definition, the trial court concluded that equity did not
require shifting the loss from Frontier to Navigant.  The trial court
explained that the facts, when viewed in the light most favorable to Frontier,
failed to show that Frontier’s liability to plaintiffs was only vicarious or
secondary either because of a legal relationship between them or because
Navigant was primarily responsible for creating the dangerous condition and
Frontier failed to discover it.  The court explained that there was no
basis to conclude that Frontier might be vicariously liable to plaintiffs for
Navigant’s negligence.  Navigant acted as an independent contractor, and
plaintiffs did not claim Navigant was primarily responsible for the condition
that caused plaintiffs’ injuries or that Frontier failed to discover Navigant’s
allegedly negligent act.  Rather, the complaint alleged that Frontier was
directly liable to plaintiffs for the injury.  The court stated that the
evidence, in the light most favorable to Frontier, showed that Navigant was
hired to provide consulting work to assist Frontier in obtaining a CPG and the
scope of this agreement did not require Navigant to take over the job of making
the Richford substation safe.

¶ 11.        
On appeal, Frontier argues that summary judgment is not appropriate
because there are disputed questions of fact regarding whether Navigant was
responsible for ensuring the safety of the substation.  Frontier asserts
that Navigant was contracted to ensure that the redesigned system would meet
the requirements for obtaining a CPG as defined in 30 V.S.A. § 248(b),
including that the project would “not adversely affect system stability and
reliability,” id. § 248(b)(3).  Frontier argues that Navigant
was negligent in providing testimony to the PSB that the system Frontier
designed was reliable.  Frontier contends that Navigant should have identified
the air-break switch at Switch 14E as making the system unreliable because
repairing it safely requires de-energizing the line and thus causes disruption
in service.  Frontier claims that Navigant’s failure to identify this
switch as unreliable created the dangerous condition, which caused plaintiff’s
accident because it was reasonably foreseeable that a future utility owner
would operate the switch unsafely.  

¶ 12.        
These claims fail to raise material disputes of fact on the issue of
whether Frontier is entitled to implied indemnity.  Even if Frontier’s
version of these facts is accepted, no obligation to indemnify arises because
Frontier has failed to show that its liability to plaintiffs was simply
vicarious or secondary, or that it was not primarily responsible for the
condition which caused the accident.  

¶ 13.        
The outcome of the question raised is well illustrated using the rule
articulated in the Restatement of Restitution, which provides: 

  Where a
person has become liable with another for harm caused to a third person because
of his negligent failure to make safe a dangerous condition of land or
chattels, which was created by the misconduct of the other or which, as
between the two, it was the other’s duty to make safe, he is entitled to
restitution from the other for expenditures properly made in the discharge of
such liability, unless after discovery of the danger, he acquiesced in the
continuation of the condition.  

 

Restatement (First) of Restitution
§ 95 (1937) (emphasis added).  To obtain the substantial relief of implied
indemnity Frontier would have to show that as between Navigant and Frontier, it
was Navigant’s duty to keep the work environment safe or that Navigant’s
misconduct created the dangerous condition.  The undisputed facts support
neither scenario.  Frontier had a nondelegable duty to design a safe
environment for foreseeable workers in the substation.  See Knisely,
171 Vt. at 647, 769 A.2d at 9 (concluding hospital not entitled to
indemnification from contractor where it had a nondelegable duty to provide
safe work environment and violation of duty was not primary fault of
contractor).  Frontier submitted no facts to demonstrate that Navigant
assumed this responsibility.  The scope of the parties’ contract was
limited to the reliability of the system for purposes of obtaining a CPG; it
did not mention safety.  

¶ 14.        
Nor has Frontier shown that Navigant was primarily responsible for
creating the dangerous condition.  Even if as part of its contracted work
to assist in obtaining a CPG Navigant was negligent in its reliability
assessment, its negligence did not create the dangerous condition that caused
the injury.  Plaintiffs alleged that the injury resulted from negligent
design of the station; improper choice, use and installation of the switch; and
failure to ensure safety.  Navigant’s scope of work did not include
designing the system, choosing the switch, or ensuring the safety of the
substation, all of which remained Frontier’s responsibility.  See id.
(holding that even if contractor, providing preventative maintenance of patient
care equipment, negligently performed its duties of testing hospital’s air
quality for waste anesthetic gas, this did not transform contractor’s
obligations into duty to maintain safe premises).  Any failure on
Navigant’s part to identify that Switch 14E threatened system reliability did
not primarily create the condition that caused plaintiffs’ injury.

¶ 15.        
Frontier further argues that there exists a question of fact to
determine if it had an “active part” in causing plaintiffs’ injury.  White,
170 Vt. at 29, 742 A.2d at 737 (explaining that “one who has taken an active
part in negligently injuring another is not entitled to indemnification from a
second tortfeasor who also negligently caused the injury”).  Frontier
asserts that even if it had a nondelegable duty to keep the transmission lines
and switches safe, any failure to meet this obligation was not active because
the switch selected was not inherently dangerous, it was dangerous only when
operated in the manner that caused the injury.  According to Frontier,
indemnity is precluded when the indemnitee knows of a hazardous condition and
fails to address it, but not when an indemnitee should have known of the hazard
but fails to discover it.  Frontier argues that because there was no
evidence, or at least conflicting evidence, to show that it was aware of the
hazard created by choosing that particular switch, indemnity was not precluded,
and, at the very least, this was a disputed question that should be resolved by
the jury.  

¶ 16.        
Again, Frontier misses the point.  Certainly, there are cases in
which a party who is otherwise entitled to indemnity may lose that right
because the party became aware of the dangerous condition and failed to make it
safe.  In those cases, it is important to know whether the party had
knowledge of the dangerous condition.  See White, 170 Vt. at 33,
742 A.2d at 739 (explaining that sauna owner could not seek indemnity from manufacturer
where owner had acquiesced in any danger created by manufacturer).  Here,
however, Frontier failed to demonstrate that its liability was for a dangerous
condition created by Navigant’s acts.  As explained above, Frontier was
responsible for ensuring the safety of the substation, for designing the
upgrade, and for choosing, and installing the switch.  Navigant did not
assume these responsibilities. 

¶ 17.        
The cases relied upon by Frontier do not support a different
outcome.  Frontier primarily cites Bardwell Motor Inn, Inc. v.
Accavallo, 135 Vt. 571, 381 A.2d 1061 (1977), to support its
position.  In that case, a hotel contracted with the defendants to replace
a glass panel in an exterior door, and without notice to the hotel, the
defendants removed the glass panel and a metal push bar and left the premises
without posting warning signs.  After a third party was injured trying to
open the door, the hotel sought indemnity from the defendants.  This Court
noted that indemnity could apply “to situations where, as here, a party has a
nondelegable duty with respect to the condition of his premises, but has
entrusted the performance of this duty to a third person, either a servant or
an independent contractor.  And a negligent failure to discover or remedy
the defect does not bar indemnity.”  Id. at 573, 381 A.2d at 1062
(citing Restatement (First) of Restitution § 95 cmt. a).  We held that as
between the hotel owner and the defendants, it was clearly the duty of the
defendants to perform in a safe and workmanlike manner and to make the door
safe and warn of any dangers created by their work, and affirmed the trial
court’s denial of the defendants’ motion to dismiss. 

¶ 18.        
Frontier asserts that just like the hotel owner, it had a nondelegable
to keep the substation safe, and it entrusted this to a contractor. 
Therefore, Frontier contends that, like the hotel owner, its failure to
discover the dangerous condition does not bar its ability to seek
indemnification.  But the difference between Bardwell and this case
is the party responsible for creating the dangerous condition.  In Bardwell,
the undisputed facts were that the defendants’ own actions created the
dangerous situation.  See id. (explaining that as between hotel
owner and defendants “it was clearly the duty of the defendants to make safe
the door on which they were working or to warn of the danger they had
created”).  Here, however, it was Frontier’s own independent acts that
created the dangerous condition.  The parties agree in their statement of
facts that Frontier chose the switch, and installed the switches. 
Navigant’s negligence, if any, was in failing to advise that the reliability of
the system was reduced by use of Switch 14E.  The undisputed facts fail to
show that it was primarily Navigant’s acts which created the dangerous
condition.

II. Express Indemnification

¶ 19.        
Next, Frontier claims that the trial court erred in granting summary
judgment to Navigant on its claim for express indemnification.  To
determine whether a contract contains an agreement to indemnify, we look at the
language of the writing itself and interpret the language “to give effect to
the intent of the parties as that intent is expressed in their writing.”  Tateosian
v. State, 2007 VT 136, ¶ 14, 183 Vt. 57, 945 A.2d 833 (quotation
omitted).  

¶ 20.        
Frontier argues that Navigant failed to demonstrate that there was an
express indemnification agreement.  In support of its motion for summary
judgment, to demonstrate that an express agreement of indemnity existed
Navigant submitted the following documents.  First, Navigant relied on a
letter dated July 23, 1999 on Navigant letterhead and signed by both
parties—Victor Blanchet for “Navigant Consulting, Inc./REED,” and the Vice
President of Frontier’s predecessor.  The letter confirms that the utility
is seeking “technical and professional support” and that Navigant will provide
“engineering, project management and operations support,” and regulatory
assistance before the PSB.  The letter recites that Frontier’s predecessor
requested Navigant employee Eugene Shlatz to provide the services.  The
letter states that the work will be performed “under NCI/REED’s Standard Terms
and Conditions.”  

¶ 21.        
Also attached to the motion for summary judgment was a document entitled
“Reed Consulting Group Terms and
Conditions.”  This document included a “Responsibility Statement,”
which contained the following language:

In no event shall
REED, its agents, employees, or others providing materials or performing services
in connection with work on this assignment be liable for any direct,
consequential or special loss or damage, whether attributable to breach of
contract, tort, including negligence, or otherwise; and except as herein
provided, you release, indemnify, and hold REED, its agents, employees, or
others providing materials or performing services in connection with work on
this assignment harmless from and against any and all liability including costs
of defense settlement and reasonable attorney’s fees, therefor.  

 

In a subsequent letter dated May
30, 2001, Mr. Shlatz wrote to the utility that he was pleased to offer services
for technical and economic consulting for the substations in Richford, Vermont
to support Frontier in obtaining a CPG.  

¶ 22.        
Navigant also submitted two affidavits.  The first was from Eugene
Shlatz, averring that he performed services for Frontier while employed by
Navigant pursuant to the July 23, 1999 letter, and including the terms and
conditions attached as an exhibit.  A second affidavit was from Dawn
Cassie, an Associate General Counsel for Navigant, who stated that Navigant
acquired REED Consulting Group in 1997 and occasionally did business under the
name “Navigant Consulting Inc./Reed.”  She also represented that Navigant
had an agreement with Frontier as outlined in the July 1999 letter, and the
terms and conditions were attached to that letter.  

¶ 23.        
On appeal, Frontier claims that Navigant’s proof was insufficient to
demonstrate that there was an enforceable agreement for two reasons. 
First, Frontier asserts that Navigant failed to show that the terms and
conditions, which were attached to the motion for summary judgment, is the
document to which the July 1999 letter refers.  Second, Frontier argues that
there is insufficient proof that the terms and conditions appended to the July
1999 letter apply to the scope of work for the Richford substation articulated
in the 2001 letter.

¶ 24.        
In assessing the sufficiency of Navigant’s proof, we give Frontier as
the nonmoving party the benefit of “all reasonable doubts and inferences,” but
in contesting Navigant’s submissions Frontier “may not rest on allegations in
the pleadings to rebut credible documentary evidence or affidavits.”  Clayton
v. Unsworth, 2010 VT 84, ¶ 16, 188 Vt. 432, 8 A.3d 1066 (quotation
omitted).  When the moving party supports their assertions of fact with
submitted materials, including documents and affidavits, and the nonmoving
party does not address the other party’s assertions, the court may consider the
facts undisputed.  See V.R.C.P. 56(c), (e)(2) (requiring party to support
assertion with citation to record, and allowing court to consider fact
undisputed for purposes of motion where opposing party fails to properly address
assertion of fact).  

¶ 25.        
Like the trial court, we reject Frontier’s argument that Navigant’s
motion is supported by insufficient evidence to show that the terms and
conditions it relies upon were the same terms referred to in the July 1999
letter and incorporated into the party’s agreement.  Frontier points out
that the July 1999 letter states that the work will be “performed under
NCI/REED’s Standard Terms and Conditions,” but the terms and conditions
submitted by Navigant is titled “REED CONSULTING GROUP TERMS AND
CONDITIONS.”  There was, nonetheless, enough support for Navigant’s
assertion that those terms and conditions were attached to the parties’
original contract.  The letter is signed by both parties, and refers to
the terms and conditions.  The Letter identifies contractor as both
Navigant Consulting Group, Inc. and as NCI/REED.  Further, the affidavit
from Cassie states that Navigant did business as Navigant/Reed, and the affidavits
from both Shlatz and Cassie aver that those were the conditions agreed to and
attached to the July 1999 letter.  Although Frontier disputes these facts,
it does not support its assertion with any evidence or citation to the record,
and its mere denial is not sufficient to create a disputed issue of fact. 


¶ 26.        
Similarly, Frontier failed to show there was a dispute of fact over
whether the indemnification provision in the terms and conditions referred to
in the 1999 letter applied to the 2001 agreement for work on the Richford
substation.  Frontier argues that the 2001 letter controls over the 1999
letter, and because it does not include reference to terms and conditions or
indemnification, no indemnification is available.  The trial court
correctly determined that there is no dispute of fact that the terms and
conditions apply to the work at the Richford substation.  Navigant
asserted such and supported its assertion with the following documentary
evidence.  The 1999 letter refers to Navigant providing “on-going
technical and professional support,” and the 2001 letter states that it
“proposes to perform these tasks under Navigant’s existing services
contract.”  Further, the affidavit from Eugene Shlatz states that the 2001
letter setting forth the scope of work to be provided in connection with the
Richford substation was intended to supplement the 1999 contract.  These
documents were sufficient to support Navigant’s assertions that the terms of
the 1999 contract, including the incorporation of the terms and conditions,
applied to the work performed on the Richford substation.  Given that
Frontier submitted no evidence to contradict the provisions of the letters or
the statement in the affidavit, the trial court did not err in accepting as fact
that the terms and conditions applied to the 2001 work agreement.  

¶ 27.        
The undisputed facts also do not support Frontier’s assertion that the
2001 agreement supplanted the indemnification provision in the 1999
agreement.  Frontier correctly states the general rule that specific
contract terms control over general ones.  Boston & M.R.R. v.
Howard Hardware Co., 123 Vt. 203, 213, 186 A.2d 184, 192 (1962) (concluding
that specific paragraph controlled over general term in contract).  This
general rule does not apply here, however, where the 2001 scope-of-work letter
does not contain any provision on indemnity and therefore does not contradict
or supersede the 1999 agreement on indemnity.

¶ 28.        
Next, Frontier argues that the indemnification provision is not
enforceable because it fails to clearly state that it applies to Navigant’s
sole negligence.  On one occasion, this Court declined to enforce an
indemnification provision for failure to expressly state that it would cover
the sole negligence of the indemnitee.  In Tateosian v. State, we
concluded that an indemnification clause in a standard contract prepared by the
State in which the contractor promised to defend against claims “arising as a
result of [the contractor’s] performance” of the contract did not cover the
sole negligence of the State, the indemnitee.  2007 VT 136, ¶ 16.  We
held that because the language was ambiguous and there was a disparity in
bargaining power between the two parties, the provision was insufficient to
extend it to covering the indemnitee’s sole negligence.  Id. ¶
22.  We emphasized that the rule in Vermont remained that “an indemnity
clause covers the sole negligence of the indemnitee only where it clearly
expresses that intent.”  Id. ¶ 23.  

¶ 29.        
Since then, this Court has described Tateosian as implementing
the “rule of construction” that “an indemnity provision covers the sole
negligence of the indemnitee only if its language clearly expresses that
intent.”  Southwick v. City of Rutland, 2011 VT 53, ¶ 9, 190
Vt. 106, 35 A.3d 113.  Thus, we have subsequently enforced
contractual-indemnity clauses where the language is “unambiguous” and part of
an arm’s-length deal.  Id. ¶¶ 13-14; see also State v.
Prison Health Servs., Inc., 2013 VT 119, ¶¶ 9-10, 195 Vt. 360, 88 A.3d
414 (explaining that indemnification provisions that are unambiguous are given
effect and indemnity will apply if parties engaged in arm’s-length
transaction).  

¶ 30.        
For those same reasons, we conclude that the indemnity clause in this
case is enforceable.  Unlike Tateosian, where there was a disparity
in bargaining power, the agreement in this case was made between two parties in
an arm’s-length transaction.  Further, the language expresses an intent to
cover injuries and damages that occur as a result of either party’s
negligence.  The indemnity clause states that Navigant is not “liable for
any direct, consequential or special loss or damage, whether attributable to
breach of contract, tort, including negligence, or otherwise” and that Frontier
will “release, indemnify,” and hold Navigant harmless.  This result is
consistent with our decisions since Tateosian, as well as decisions
prior to Tateosian that were distinguished in that case.  In Southwick,
a the contract provision required one defendant, the Vermont Swim Association
(VSA), to indemnify the City of Rutland for “all claims for bodily injury or
property damage arising from or out of the presence of [VSA] . . . or [VSA]’s
activities,” 2011 VT 53, ¶ 5, and we concluded that it was “deliberately broad
enough to cover all injuries and damages that might occur—as a result of either
party’s negligence.”  Id. ¶ 13.  The provision in this
case is just as clear.  Therefore, the trial court did not err in granting
Navigant summary judgment on its claim for express indemnity.

¶ 31.        
On a final note, we address Frontier’s motion to strike the supplemental
printed case filed by Navigant, which includes the special jury verdict and
subsequent stipulation by the parties to dismiss plaintiffs’ claims. 
Frontier argues that this is an improper expansion of the record on appeal
because these documents were not before the trial court at the time of its
ruling on summary judgment.  In reaching our decision, we have not considered
this information, and therefore we deny the motion as moot. 

Affirmed.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief
 Justice
 
 


 














[1] 
The underlying facts of this case are set forth in this Court’s decision in an
interlocutory appeal on whether the worker’s compensation exclusivity provision
barred the personal-injury matter.  Hemond v. Frontier Commc’ns of Am.,
Inc., 2012 VT 94, 192 Vt. 646, 59 A.3d 766 (mem.).  As explained in
that decision, at the time plaintiff was injured, the utility assets were owned
by Citizens Communications Company, which was later purchased by
Frontier.  For ease of reading, “Frontier” as used in this decision refers
to actions taken by both Frontier and its predecessors-in-interest. 

 





[2] 
Plaintiffs’ complaint set forth the following information concerning the
properties of the switch.  Switch 14E is a unitized switch, which means
that it shares a common pole and one terminal per phase with Switch 14W. 
All three of its electrical phases are mechanically linked so that they open
and close simultaneously.  The switch is opened and closed using a
vertical steel pipe.  When the pipe is rotated the blades of the switch
open.  





[3] 
When a switch is opened, the flow of power is interrupted.  If electricity
is flowing through the line when it is opened, an electrical arc can form as
the electricity attempts to move through the ionized air.  Although the
manufacturer of the switch makes it with optional insulating components, and
with a vacuum interrupting feature, neither component was installed with Switch
14E.  

 





[4] 
The trial court initially denied Navigant’s motion for summary judgment because
Frontier had asserted several defenses that remained unresolved. 
Following additional filings and a renewed motion for summary judgment, the
court granted the motion, and entered a final judgment order on the
indemnification cross-claims.