### Geoffrey R. KNISELY v. CENTRAL VERMONT HOSPITAL, et al.

[769 A.2d 5]

No. 99-158

October 12, 2000. Central Vermont Hospital (Hospital) appeals the dismissal of its third-party indemnity claim against Technical Services Program at the University of Vermont (TSP). The indemnity case stems from a claim by Dr. Geoffrey Knisely, an anesthesiologist at the Hospital who alleged that, as a result of the Hospital's negligence in providing a safe workplace, he developed hepatitis resulting from exposure to waste anesthetic gases. The Hospital settled Dr. Knisely's claim and sought indemnity from TSP for its alleged failure to effectively monitor and report the level of waste gases in the Hospital's operating rooms. The superior court granted TSP's motion for summary judgment finding that there was no express agreement by TSP to indemnify the Hospital and concluding that the Hospital was not entitled to implied indemnity. We agree with the superior court that, as a matter of law, the Hospital is not entitled to indemnification; accordingly, we affirm the court's judgment.

A summary judgment ruling is affirmed only where the record shows no genuine dispute of material fact, and that one party is entitled to judgment as a matter of law. V.R.C.P. 56(c); *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). The party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." V.R.C.P. 56(e). We regard all allegations made in opposition to summary judgment as true, if supported by affidavits or other evidence. *Chapman v. Sparta*, 167 Vt. 157, 159, 702 A.2d 132, 134 (1997).

The following facts were largely undisputed. Dr. Knisely, plaintiff in the underlying case, worked as an anesthesiologist at Central Vermont Hospital from 1986 until 1992, when he was diagnosed with hepatitis. Dr. Knisely's complaint alleged injury from exposure to waste anesthetic gases, specifically to excess levels of halothane, as a result of the Hospital's negligence in failing to provide adequate ventilation and air exchange in the operating rooms. Dr. Knisely also alleged that the Hospital was aware of the inadequacy of the ventilation system and deliberately concealed that information from him and others who were exposed to the dangerous conditions.

According to Dr. Knisely, air exchanges are "one of the major ways to get rid of the waste gases and other chemicals that are present in [the] operating room." Although Vermont Department of Health Regulations set the minimum standard at fifteen exchanges per hour, during the course of his employment, the Hospital documented the number of air exchanges per hour in the operating rooms to be between five and seven, and as low as two. The Hospital acknowledged that it became aware that the air exchange system in the operating rooms was not functioning properly in 1987 during a renovation, and the record indicates that Hospital officials had been aware that the system was faulty as early as 1969.

The University of Vermont's Technical Services Program provides preventative maintenance services and repairs on patient care equipment at hospitals. In 1981, the Hospital contracted with TSP to test the air in its operating rooms for the presence of waste anesthetic gases twice annually, and to report its findings to Hospital staff. On at least one occasion, in April 1990, TSP found, and reported, air levels of glutaraldehyde in the Hospital's endoscopy and operating rooms to be 25-30 times higher than a recently-revised legal limit.

In granting summary judgment in favor of TSP, the court found that the Hospital had a nondelegable duty to make its workplace safe for those who would be using it. Further, the court found that although the Hospital assigned a portion of the task to TSP—that of inspecting and reporting gas levels in operating rooms—TSP was neither assigned, nor undertook, the task of repairing the Hospital's allegedly inadequate ventilation system.[1] The court also found that, during the relevant period, the Hospital knew of its ventilation problem. Finally, the superior court concluded that the Hospital "acquiesced in the dangerous situation" because it "did nothing to stop what became the injury to the anesthesiologist."[2]

In its appeal of the summary judgment decision, the Hospital contends that factual issues remained in determining the

---

[1] Repairs of the Hospital's air exchange system were apparently entrusted to outside contractors, Northeastern Heating and Ventilating, Hallam Associates, and Johnson Controls.

[2] For reasons set forth in this opinion, we find the superior court's conclusion with respect to "acquiescence" unnecessary to support its summary judgment in favor of TSP. See *Bissonnette v. Wylie*, 166 Vt. 364, 370, 693 A.2d 1050, 1055 (1997) (Court may affirm trial court's decision though based on a different rationale).

proximate cause of Dr. Knisely's injuries. Because the underlying case with Dr. Knisely settled before trial, neither the presence of excessive levels of glutaraldehyde, nor the actual rate of air exchange were established to be the cause of Dr. Knisely's halothane-induced hepatitis. The Hospital further alleges that TSP failed to perform its duty to monitor the level of employee exposure to waste gases in a careful and skillful manner, as its sampling procedures and analysis were unreliable. In particular, the Hospital points to TSP's failure to report the presence of excess levels of halothane, the purported cause of Dr. Knisely's injury. Finally, the Hospital contends that it had no knowledge of excess levels of halothane in its operating rooms, and therefore did not knowingly acquiesce to the continuance of a dangerous condition. None of the Hospital's allegations, however, raise material facts relevant to the issue of indemnity to defeat judgment as a matter of law in favor of TSP.

The right to indemnity arises when "(a) there is an express agreement or undertaking by one to indemnify the other, or (b) the circumstances are such that the law will imply such an undertaking." *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 572, 381 A.2d 1061, 1062 (1977). The contract between the parties is silent on the issue of indemnification. As the third-party plaintiff in this action, the Hospital has the burden of establishing its right to implied indemnification. *Quechee Lakes*, 170 Vt. at 31, 742 A.2d at 738.

The right to indemnity is an exception to the longstanding rule in Vermont barring contribution among joint tortfeasors. *Chapman v. Sparta*, 167 Vt. at 159, 702 A.2d at 134. Indemnification accrues "to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." *Morris v. American Motors Corp.*, 142 Vt. 566, 576, 459 A.2d 968, 974 (1982). Implied indemnity should be imputed "only when equitable considerations concerning the nature of the parties' obligations to one another or the significant difference in the kind or quality of their conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party to another." *Quechee Lakes*, 170 Vt. at 29, 742 A.2d at 737 (citing W. Keeton, Prosser and Keeton on the Law of Torts § 51, at 344 (5th ed. 1984)).

"[I]mplied indemnification is usually appropriate only when the indemnitee is vicariously or secondarily liable to a third person because of some legal relationship with that person or because of the indemnitee's failure to discover a dangerous condition caused by the act of the indemnitor, who is *primarily* responsible for the condition." *Id.* (emphasis added) (citing Prosser and Keeton § 51, at 341-43). The Restatement of Restitution § 95 (1937) sets forth the rule:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, *it was the other's duty to make safe*, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

*Id.* (emphasis added).

The Hospital vigorously asserts that it cannot be said to have acquiesced to a dangerous condition because material facts remain in dispute about its knowledge of elevated levels of gases, and whether the elevated levels were the re-

sult of existing ventilation problems. It has greater difficulty, however, in contravening the trial court's conclusion that as between the Hospital and TSP there is no material dispute that it was the Hospital's duty to make the operating rooms safe for the employees who worked there.

The Hospital has a nondelegable duty to provide a safe workplace for its employees. See 21 V.S.A. § 223(a); *Gerrish v. Savard*, 169 Vt. 468, 474, 739 A.2d 1195, 1199 (1999). Although we have recognized implied indemnity claims in circumstances where the indemnitor assumed the same duty over which the injured party was suing, we have done so only where as a matter of equitable indemnification it could be determined that "the violation of that duty was clearly the primary fault of the [indemnitor]." *Bardwell*, 135 Vt. at 573, 381 A.2d at 1062. In *Bardwell*, for example, plaintiff, a hotel, contracted with defendants to replace a glass panel in a door to its main entrance. Defendants removed the glass panel without giving prior notice to plaintiff, and left without advising plaintiff of the existing dangerous condition or posting any warning signs. Plaintiff sought indemnification for its liability for injuries suffered by one of its patrons while trying to open the door. Upholding a judgment for the plaintiff, we explained:

> [I]t was clearly the duty of the defendants to make safe the door on which they were working or to warn of the danger they had created. While, as against the person injured, plaintiff here had a nondelegable duty to keep its premises reasonably safe, the violation of that duty was clearly the primary fault of the defendants, and a right of indemnity in the plaintiff follows.

*Id.*; see also *Chapman*, 167 Vt. at 160-61, 702 A.2d at 134-35 (if responsibility for selecting floor tiles entrusted to defendant, the plaintiff could seek indemnification); *Morris*, 142 Vt.at 576-77, 459 A.2d at 974 (manufacturer of a defective automobile part was required to indemnify automobile manufacturer who was found vicariously liable for injuries sustained as a result of the defect); *Peters v. Mindell*, 159 Vt. 424, 429, 620 A.2d 1268, 1271 (1992) (engineering company that contracted with sellers of a home to design and build septic system would be required to indemnify sellers for any liability to buyers for defect in the septic system, so long as sellers did not acquiesce in the defect).

Here it cannot be said that the Hospital entrusted its nondelegable duty to maintain a safe workplace for its employees to TSP. Pursuant to its contract, TSP's duties consisted of visiting the Hospital twice a year to test the "anesthesia machines for leaks and also . . . the ambient air during surgical procedures," and to regularly report its findings to Hospital officials. The Hospital claims that TSP did not perform its duties in a safe and skillful manner. But that characterization, even if accurate, does not transform TSP's obligation into a duty to maintain the Hospital premises in a safe condition for its employees. See *Hopper v. Kelz*, 166 Vt. 616, 617, 694 A.2d 415, 416 (1997) (mem.) (rejecting an indemnity claim by homeowner against appliance company where company's duty to replace the refrigerator in a safe and skillful manner did not incur a duty with respect to the safety of homeowner's stairway upon which company employee was injured).

*Affirmed.*

Motion for reargument denied January 5, 2001.