**CITY OF BURLINGTON, et al. v. ARTHUR J. GALLAGHER & CO., et al.**

[788 A.2d 18]

No. 00-482

October 29, 2001. The City of Burlington and those certain Underwriters at Lloyd's, London ("Underwriters") appeal a superior court order granting defendants, Arthur J. Gallagher & Co. and its subsidiaries, summary judgment against Underwriters and partial summary judgment against Burlington. Underwriters sought indemnity, or alternatively presumptive damages, from Gallagher, an insurance broker that procured a liability insurance policy for the City of Burlington, because Gallagher failed to notify Underwriters of a claim made against the city. Burlington sought punitive damages from Gallagher, in addition to compensatory damages. We find no error in the superior court's order and therefore affirm.

The essential facts are not disputed. Gallagher brokered an Airport Owners' and Operators' Liability policy from Underwriters for the Burlington International Airport starting in 1985. The policy provided coverage for, among other things, damages caused by wrongful eviction and legal costs incurred to defend any third-party claim. Like most liability policies, the policy required Burlington to promptly notify Underwriters of any claim made against the city under the policy. Such notice was to be provided to Gallagher rather than to Underwriters directly, according to the policy's terms.

On July 13, 1989, Burlington notified Gallagher of a suit that one of the city's airport tenants had filed against it. The tenant, Business Air, Inc., claimed damages resulting from a 1987 eviction after the roof trusses failed in the hangar it leased. Burlington and Business Air eventually settled the suit for $795,000 in 1993. Following the settlement, Gallagher finally notified Underwriters of the claim against Burlington.

After Underwriters became aware of the Business Air action, it negotiated a one million dollar settlement with Burlington for any claims arising from the Underwriters' failure to defend the city and provide coverage for Business Air's claim against Burlington. Underwriters, along with Burlington, then sued Gallagher for not promptly notifying Underwriters of the Business Air matter. The insurer's complaint alleged that Gallagher breached its duty as Underwriters' agent and fiduciary to timely notify Underwriters of the claim against Burlington. Underwriters asserted that Gallagher's untimely notice harmed the company because it was unable to investigate and evaluate Business Air's claim and monitor and control the defense. To remedy that harm, Underwriters asked for "implied indemnification and/or presumptive damages . . . in the full amount paid by Underwriters to Burlington in the settlement."

The case proceeded through discovery, which was the subject of some dispute. Gallagher sought documents that would show the extent of Underwriters' actual damages from the delayed notification. Underwriters refused to supply the requested documents and agreed to limit its damages theories to presumed damages and/or implied indemnity and actual damages in the form of transaction and accounting expenses. caused by Gallagher's late claim notice. The court then issued a discovery order memorializing the limit on damages which could be claimed and denying the request for documents. Underwriters subsequently abandoned the accounting and transaction expense theory of damages, leaving presumed damages and implied indemnity as the remaining theories.

In January and March 2000, Gallagher and Underwriters respectively moved for summary judgment. Underwriters argued that it should be relieved of its obligations under the insurance contract due to Gallagher's late claim notice for the same reasons an insurer is relieved of its obligations when the insured provides untimely notice. Underwriters' theory

would hold Gallagher ultimately responsible for fulfilling the insurance contract's coverage commitments just as the insured is so responsible in late claim notice cases. Gallagher opposed Underwriters' motion. It sought summary judgment against Underwriters on all counts and against Burlington on the issue of punitive damages. The court granted judgment for Gallagher, concluding that there was no legal basis or precedent to support Underwriters' claims, and there was insufficient evidence to establish malice to warrant presenting the punitive damages claim to a jury. On reconsideration, the court again found no basis for Underwriters' claims that implied indemnity and presumed damages are available to the insurer from the broker's untimely claim notice. The court entered final judgment for Gallagher on all of Underwriters' claims, and summary judgment for Gallagher on Burlington's claim for punitive damages only. This appeal followed.

Assuming Underwriters has a valid liability claim for Gallagher's breach of its professional duty to provide timely notice of claims to Underwriters, Underwriters chose not to pursue its actual damages as a result of Gallagher's apparent breach. That choice is fatal to Underwriters' claims here. A plaintiff in a professional negligence case such as this must prove "by a preponderance of the evidence, the extent and nature of their damages." *Callan v. Hackett*, 170 Vt. 609, 609, 749 A.2d 626, 628 (2000) (mem.). Nevertheless, Underwriters asserts here that the trial court erroneously granted Gallagher summary judgment because the insurer is entitled to recover its coverage settlement with Burlington under three other theories: (1) implied indemnification, (2) indemnification under *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 724 A.2d 454 (1998), and (3) "presumed"

or "general" damages.* We review each theory in turn using the same summary judgment standard applicable in the trial courts. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). The moving party must show no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c). Gallagher has satisfied that standard here because Underwriters' damages theories have no legal basis under the circumstances of this case.

Underwriters seeks recovery of its settlement with the City of Burlington under what it calls "conventional" indemnity. Indemnity is available where (1) an express agreement or undertaking by one party to indemnify the other exists or (2) circumstances require the law to imply such an undertaking. *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 572, 381 A.2d 1061, 1062 (1977). Underwriters does not claim that it had an express indemnity agreement with Gallagher. Instead, the company argues that it is entitled to implied indemnity. Implied "indemnity is a right accruing to a party who, without active fault, has been compelled by some legal obligation, such as a finding of vicarious liability, to pay damages occasioned by the negligence of another." *Morris v. American Motors Corp.*, 142 Vt. 566, 576, 459 A.2d 968, 974 (1982). In such cases, indemnity is implied for equitable reasons where it is fair to shift the loss resulting from

---

* Underwriters also asserts on appeal that the court should have let it litigate a claim for actual damages before a jury. The last claim has no merit because the insurer abandoned its actual damages theory below to protect it from responding to Gallagher's discovery requests. Accordingly, the claim was not preserved and we do not address it. See *In re Miller*, 170 Vt. 64, 69, 742 A.2d 1219, 1223 (1999).

negligence from one party to the more responsible party. *Knisely v. Central Vt. Hosp.*, 171 Vt. 644, 646, 769 A.2d 5, 8 (2000). Here, Underwriters' obligation to Burlington arose out of the insurance policy it issued to the city and not as a result of Gallagher's untimely notice of the Business Air suit. Consequently, equity does not require shifting the loss from Underwriters, the party with insurance coverage obligations, to Gallagher. Summary judgment for Gallagher on this theory was appropriate.

Underwriters' second damages theory relies on our decision in *Carr v. Peerless Insurance Co.*, 168 Vt. 465, 724 A.2d 454, although that reliance is wholly misplaced. *Carr* involved an insurance premium finance company's failure to follow statutory notice provisions when it cancelled the insured's policy for nonpayment. We found no basis to require the insurer to pay under the cancelled policy, but determined that the insured had a claim against the finance company under both the relevant statute and the contract between the insured and the premium finance company. See *id.* at 473-74, 724 A.2d at 459-60. The insured's remedy, we held, was to provide the policy benefits to the insured as if the cancellation had not taken place. *Id.* at 477, 724 A.2d at 461. We reasoned that that remedy was "necessary to implement the statutory prohibition on the premium finance company using the power of attorney to cancel the policy, except pursuant to the" required statutory procedures. *Id.* at 477, 724 A.2d at 461-62.

Underwriters has not pointed to any analogous statutory provision to justify the *Carr* result in this case. Instead, the company argues that we should apply the same result here to avoid the inherently speculative proof concerning what would have happened if Gallagher had provided timely notice of the claim against Burlington, and to reallocate liability onto the actual wrongdoer, Gallagher, rather

than Underwriters, the innocent party. Relying on *Carr*, Underwriters wants damages from Gallagher's late notice without having to demonstrate precisely what those damages are. *Carr* provides no support for this theory, and we can find no other precedent that does. Accordingly, the superior court correctly concluded that Gallagher was entitled to judgment as a matter of law on this issue.

Underwriters also argues that in the absence of known or liquidated damages, relief is available to it under the doctrine of "presumed" or "general" damages. The heart of this argument is the same as Underwriters' other arguments — the company wants Gallagher to pay damages but does not want to prove what those damages are. Unfortunately for Underwriters, the principle of "presumed" or "general" damages has no application in this case.

"General" or "presumed" damages are those "so frequently resulting that their existence is normally to be anticipated and that do not need to be alleged to be proved." 2 S. Speiser, et al., The American Law of Torts § 8:6, at 459 (1985). For example, under Vermont common law, actual harm to one's reputation is presumed "from the mere publication of a defamatory falsehood" and thus general or presumed damages may be awarded without special pleading or proof. *Ryan v. Herald Ass'n, Inc.*, 152 Vt. 275, 281, 566 A.2d 1316, 1320 (1989). No such presumption of harm can be made in professional negligence cases, however. As we noted previously, damages for negligent acts continue to require proof of actual harm. See *Callan*, 170 Vt. at 609, 749 A.2d at 628. The trial court did not err by remaining faithful to that standard.

We now turn to the City of Burlington's only claim on appeal. The city seeks reinstatement of its claim for punitive damages against Gallagher. Burlington claims the evidence was sufficient to allow the jury to decide the

question. We disagree. Punitive damages are designed to deter the wrongdoer from repeating the same or similar acts, and to punish intentional, deliberate, and malicious conduct. *Brueckner v. Norwich University*, 169 Vt. 118, 129, 730 A.2d 1086, 1095 (1999). Simply engaging in wrongful conduct is insufficient to establish the element of malice necessary to successfully recover punitive damages. *Id.* Burlington failed to present enough evidence that Gallagher acted maliciously to overcome Gallagher's motion for summary judgment.

Burlington points to Gallagher's repeated failure to fulfill its obligations to notify it and Underwriters of the Business Air claim as evidence of Gallagher's bad intent. It also cites an affidavit of an expert witness who opined that Gallagher's poor practices were self-serving and enhanced Gallagher's ability to secure additional business. Although Gallagher may have acted incompetently and with disregard to Burlington's rights under the insurance policy Gallagher brokered, its actions fail to evidence the level of maliciousness required to present a punitive damages claim to a jury. The trial court, therefore, correctly dismissed the city's punitive damages claim.

*Affirmed.*