2015 VT 66

## Michael Hemond and Tracey Hemond v. Frontier Communications of America, Inc., f/k/a Citizens Communications Company, d/b/a Citizens Energy Services v. Navigant Consulting, Inc.

[122 A.3d 1205]

No. 14-116

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Griffin, Supr. J., Specially Assigned

Opinion Filed April 17, 2015

*Robert S. DiPalma* of *Paul Frank + Collins P.C.*, Burlington, for Cross-Plaintiff/Cross-Defendant/Appellee.

*Kaveh S. Shahi* of *Cleary Shahi & Aicher, P.C.*, Rutland, and *Henry P. Sorett* of *Brickley Sears & Sorett*, Boston, Massachusetts, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** This case involves an indemnity dispute between two defendants in a suit arising after plaintiff Michael Hemond suffered a tragic electrocution injury while working on an electrical switch. Defendant Frontier Communications of America, Inc.,[1] who owned the electrical equipment on which the accident

---

[1] The underlying facts of this case are set forth in this Court's decision in an interlocutory appeal on whether the workers' compensation exclusivity provision barred the personal-injury matter. *Hemond v. Frontier Commc'ns of Am., Inc.*, 2012 VT 94, 192 Vt. 646, 59 A.3d 766 (mem.). As explained in that decision, at the time plaintiff was injured, the utility assets were owned by Citizens Communications Company, which was later purchased by Frontier. For ease of reading,

took place, claimed implied indemnity from Navigant Consulting Group, Inc., a contractor. Navigant cross-claimed for indemnification from Frontier based on express statements in the parties' contract. The court granted summary judgment to Navigant on both Frontier's claim for implied indemnification and Navigant's claim of express indemnification against Frontier. Frontier appeals, arguing that the court erred in concluding that the undisputed facts demonstrated that Frontier failed to meet the requirements for implied indemnification and that a valid express indemnification agreement existed between the parties. We affirm.

¶ 2. The relationship between Frontier and Navigant began in 2001 when Frontier was planning an upgrade for the Richford substation and hired Navigant as a consultant to assist in obtaining a certificate of public good (CPG). Navigant's employee, Eugene Shlatz, provided testimony to the Vermont Public Service Board (PSB) that the upgrade would enable Frontier "to provide more stable and reliable service to its customers." The upgrade plan, created by Frontier's own electrical engineer, included removing an oil break circuit at that location and installing a new group-operated air break switch, which included switches 14E and 14W.[2] Frontier selected the air break switch.

¶ 3. The switch was not completely installed and was not grounded by the time plaintiff Michael Hemond was directed to open it in September 2006 to de-energize a portion of the line and allow work to be performed. When plaintiff Michael Hemond opened Switch 14E, an electrical arc formed across the support structure, and electrocuted plaintiff, causing permanent and painful injuries.[3]

---

"Frontier" as used in this decision refers to actions taken by both Frontier and its predecessors-in-interest.

[2] Plaintiffs' complaint set forth the following information concerning the properties of the switch. Switch 14E is a unitized switch, which means that it shares a common pole and one terminal per phase with Switch 14W. All three of its electrical phases are mechanically linked so that they open and close simultaneously. The switch is opened and closed using a vertical steel pipe. When the pipe is rotated the blades of the switch open.

[3] When a switch is opened, the flow of power is interrupted. If electricity is flowing through the line when it is opened, an electrical arc can form as the electricity attempts to move through the ionized air. Although the manufacturer of the switch makes it with optional insulating components, and with a vacuum interrupting feature, neither component was installed with Switch 14E.

¶ 4. Plaintiffs brought suit against several defendants, including Frontier and Navigant. Plaintiffs alleged negligence in the design, manufacture, installation, and construction of the Richford substation, and of the switch in particular.

¶ 5. In February 2011, following mediation, plaintiffs entered a settlement with all defendants, except Frontier. Frontier then filed a cross-claim against the other codefendants, including Navigant, claiming that it was entitled to implied indemnification from them. Shortly thereafter, Navigant filed a claim against Frontier, asserting that it was entitled to contractual indemnity from Frontier.

¶ 6. Both defendants filed motions for summary judgment. In separate orders, the trial court granted summary judgment to Navigant on Frontier's claim for implied indemnification, and on Navigant's claim for express indemnification.[4] Frontier appeals both summary judgment decisions.

¶ 7. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). On appeal from a summary judgment decision, this Court applies the same standard as the trial court. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). "We regard all allegations made in opposition to summary judgment as true, if supported by affidavits or other evidence." *Knisely v. Cent. Vt. Hosp.*, 171 Vt. 644, 645, 769 A.2d 5, 6 (2000) (mem.).

¶ 8. ■ The obligation to indemnify, which is the subject of these summary judgment decisions, can arise in two ways: a party can expressly agree to indemnify another, or the right to indemnity may be implied where "circumstances require the law to imply such an undertaking." *City of Burlington v. Arthur J. Gallagher & Co.*, 173 Vt. 484, 486, 788 A.2d 18, 21 (2001) (mem.). Here both concepts are at issue. Frontier alleged that it was entitled to implied indemnification because it claimed that Navigant was responsible for advising on the suitability of the electrical system and its negligence in failing to advise against use of Switch 14E caused the dangerous condition. Navigant cross-

---

[4] The trial court initially denied Navigant's motion for summary judgment because Frontier had asserted several defenses that remained unresolved. Following additional filings and a renewed motion for summary judgment, the court granted the motion, and entered a final judgment order on the indemnification cross-claims.

claimed for express indemnification under a provision of the parties' contract. We consider the court's decisions on each claim in turn.

## I. Implied Indemnification

¶ 9. ■ First, we address Frontier's claim that the court erred in granting summary judgment to Navigant on Frontier's claim for implied indemnification. Indemnity is "an exception to our longstanding rule barring contribution among joint tortfeasors." *White*, 170 Vt. at 28, 742 A.2d at 736. Therefore, indemnity is "imputed only when equitable considerations concerning the nature of the parties' obligations to one another or the significant difference in the kind or quality of their conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party to another." *Id.* at 29, 742 A.2d at 737 (citing W. Keeton, Prosser and Keeton on the Law of Torts § 51, at 344 (5th ed. 1984)). We have acknowledged the difficulty of articulating a general rule on implied indemnity, but have explained that usually it will apply only when the party seeking indemnity is vicariously or secondarily liable to the third person because of a legal relationship with the third person or because of the party's failure to discover a dangerous condition caused by the indemnifying party, "who is primarily responsible for the condition." *Id.*

¶ 10. Applying this definition, the trial court concluded that equity did not require shifting the loss from Frontier to Navigant. The trial court explained that the facts, when viewed in the light most favorable to Frontier, failed to show that Frontier's liability to plaintiffs was only vicarious or secondary either because of a legal relationship between them or because Navigant was primarily responsible for creating the dangerous condition and Frontier failed to discover it. The court explained that there was no basis to conclude that Frontier might be vicariously liable to plaintiffs for Navigant's negligence. Navigant acted as an independent contractor, and plaintiffs did not claim Navigant was primarily responsible for the condition that caused plaintiffs' injuries or that Frontier failed to discover Navigant's allegedly negligent act. Rather, the complaint alleged that Frontier was directly liable to plaintiffs for the injury. The court stated that the evidence, in the light most favorable to Frontier, showed that Navigant was hired to provide consulting work to assist Frontier in obtaining a CPG and the scope of this agreement did not require Navigant to take over the job of making the Richford substation safe.

¶ 11. On appeal, Frontier argues that summary judgment is not appropriate because there are disputed questions of fact regarding whether Navigant was responsible for ensuring the safety of the substation. Frontier asserts that Navigant was contracted to ensure that the redesigned system would meet the requirements for obtaining a CPG as defined in 30 V.S.A. § 248(b), including that the project would "not adversely affect system stability and reliability," *id.* § 248(b)(3). Frontier argues that Navigant was negligent in providing testimony to the PSB that the system Frontier designed was reliable. Frontier contends that Navigant should have identified the air-break switch at Switch 14E as making the system unreliable because repairing it safely requires de-energizing the line and thus causes disruption in service. Frontier claims that Navigant's failure to identify this switch as unreliable created the dangerous condition, which caused plaintiff's accident because it was reasonably foreseeable that a future utility owner would operate the switch unsafely.

¶ 12. ■ These claims fail to raise material disputes of fact on the issue of whether Frontier is entitled to implied indemnity. Even if Frontier's version of these facts is accepted, no obligation to indemnify arises because Frontier has failed to show that its liability to plaintiffs was simply vicarious or secondary, or that it was not primarily responsible for the condition which caused the accident.

¶ 13. ■ The outcome of the question raised is well illustrated using the rule articulated in the Restatement of Restitution, which provides:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, *which was created by the misconduct of the other or which, as between the two, it was the other's ·duty to make safe,* he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.

Restatement of Restitution § 95 (1937) (emphasis added). To obtain the substantial relief of implied indemnity Frontier would have to show that as between Navigant and Frontier, it was

Navigant's duty to keep the work environment safe or that Navigant's misconduct created the dangerous condition. The undisputed facts support neither scenario. Frontier had a nondelegable duty to design a safe environment for foreseeable workers in the substation. See *Knisely*, 171 Vt. at 647, 769 A.2d at 9 (concluding hospital not entitled to indemnification from contractor where it had a nondelegable duty to provide safe work environment and violation of duty was not primary fault of contractor). Frontier submitted no facts to demonstrate that Navigant assumed this responsibility. The scope of the parties' contract was limited to the reliability of the system for purposes of obtaining a CPG; it did not mention safety.

¶ 14. Nor has Frontier shown that Navigant was primarily responsible for creating the dangerous condition. Even if as part of its contracted work to assist in obtaining a CPG Navigant was negligent in its reliability assessment, its negligence did not create the dangerous condition that caused the injury. Plaintiffs alleged that the injury resulted from negligent design of the station; improper choice, use and installation of the switch; and failure to ensure safety. Navigant's scope of work did not include designing the system, choosing the switch, or ensuring the safety of the substation, all of which remained Frontier's responsibility. See *id.* (holding that even if contractor, providing preventative maintenance of patient care equipment, negligently performed its duties of testing hospital's air quality for waste anesthetic gas, this did not transform contractor's obligations into duty to maintain safe premises). Any failure on Navigant's part to identify that Switch 14E threatened system reliability did not primarily create the condition that caused plaintiffs' injury.

¶ 15. Frontier further argues that there exists a question of fact to determine if it had an "active part" in causing plaintiff's injury. *White*, 170 Vt. at 29, 742 A.2d at 737 (explaining that "one who has taken an active part in negligently injuring another is not entitled to indemnification from a second tortfeasor who also negligently caused the injury"). Frontier asserts that even if it had a nondelegable duty to keep the transmission lines and switches safe, any failure to meet this obligation was not active because the switch selected was not inherently dangerous, it was dangerous only when operated in the manner that caused the injury. According to Frontier, indemnity is precluded when the indemnitee knows of a hazardous condition and fails to address it,

but not when an indemnitee should have known of the hazard but fails to discover it. Frontier argues that because there was no evidence, or at least conflicting evidence, to show that it was aware of the hazard created by choosing that particular switch, indemnity was not precluded, and, at the very least, this was a disputed question that should be resolved by the jury.

¶ 16. Again, Frontier misses the point. Certainly, there are cases in which a party who is otherwise entitled to indemnity may lose that right because the party became aware of the dangerous condition and failed to make it safe. In those cases, it is important to know whether the party had knowledge of the dangerous condition. See *White*, 170 Vt. at 33, 742 A.2d at 739 (explaining that sauna owner could not seek indemnity from manufacturer where owner had acquiesced in any danger created by manufacturer). Here, however, Frontier failed to demonstrate that its liability was for a dangerous condition created by Navigant's acts. As explained above, Frontier was responsible for ensuring the safety of the substation, for designing the upgrade, and for choosing, and installing, the switch. Navigant did not assume these responsibilities.

¶ 17. The cases relied upon by Frontier do not support a different outcome. Frontier primarily cites *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 381 A.2d 1061 (1977), to support its position. In that case, a hotel contracted with the defendants to replace a glass panel in an exterior door, and without notice to the hotel, the defendants removed the glass panel and a metal push bar and left the premises without posting warning signs. After a third party was injured trying to open the door, the hotel sought indemnity from the defendants. This Court noted that indemnity could apply "to situations where, as here, a party has a nondelegable duty with respect to the condition of his premises, but has entrusted the performance of this duty to a third person, either a servant or an independent contractor. And a negligent failure to discover or remedy the defect does not bar indemnity." *Id.* at 573, 381 A.2d at 1062 (citing Restatement of Restitution § 95 cmt. a). We held that as between the hotel owner and the defendants, it was clearly the duty of the defendants to perform in a safe and workmanlike manner and to make the door safe and warn of any dangers created by their work, and affirmed the trial court's denial of the defendants' motion to dismiss.

¶ 18. Frontier asserts that just like the hotel owner, it had a nondelegable duty to keep the substation safe, and it entrusted

this to a contractor. Therefore, Frontier contends that, like the hotel owner, its failure to discover the dangerous condition does not bar its ability to seek indemnification. But the difference between *Bardwell* and this case is the party responsible for creating the dangerous condition. In *Bardwell*, the undisputed facts were that the defendants' own actions created the dangerous situation. See *id.* (explaining that as between hotel owner and defendants "it was clearly the duty of the defendants to make safe the door on which they were working or to warn of the danger they had created"). Here, however, it was Frontier's own independent acts that created the dangerous condition. The parties agree in their statement of facts that Frontier chose the switch, and installed the switches. Navigant's negligence, if any, was in failing to advise that the reliability of the system was reduced by use of Switch 14E. The undisputed facts fail to show that it was primarily Navigant's acts which created the dangerous condition.

## II. Express Indemnification

¶ 19. █ Next, Frontier claims that the trial court erred in granting summary judgment to Navigant on its claim for express indemnification. To determine whether a contract contains an agreement to indemnify, we look at the language of the writing itself and interpret the language "to give effect to the intent of the parties as that intent is expressed in their writing." *Tateosian v. State*, 2007 VT 136, ¶ 14, 183 Vt. 57, 945 A.2d 833 (quotation omitted).

¶ 20. Frontier argues that Navigant failed to demonstrate that there was an express indemnification agreement. In support of its motion for summary judgment, to demonstrate that an express agreement of indemnity existed Navigant submitted the following documents. First, Navigant relied on a letter dated July 23, 1999 on Navigant letterhead and signed by both parties — Victor Blanchet for "Navigant Consulting, Inc./REED," and the vice president of Frontier's predecessor. The letter confirms that the utility is seeking "technical and professional support" and that Navigant will provide "engineering, project management and operations support," and regulatory assistance before the PSB. The letter recites that Frontier's predecessor requested Navigant employee Eugene Shlatz to provide the services. The letter states that the work will be performed "under NCI/REED's Standard Terms and Conditions."

¶ 21. Also attached to the motion for summary judgment was a document entitled "REED CONSULTING GROUP TERMS AND CONDITIONS." This document included a "Responsibility Statement," which contained the following language:

> In no event shall REED, its agents, employees, or others providing materials or performing services in connection with work on this assignment be liable for any direct, consequential or special loss or damage, whether attributable to breach of contract, tort, including negligence, or otherwise; and except as herein provided, you release, indemnify, and hold REED, its agents, employees, or others providing materials or performing services in connection with work on this assignment harmless from and against any and all liability including costs of defense settlement and reasonable attorney's fees, therefor.

In a subsequent letter dated May 30, 2001, Mr. Shlatz wrote to the utility that he was pleased to offer services for technical and economic consulting for the substations in Richford, Vermont to support Frontier in obtaining a CPG.

¶ 22. Navigant also submitted two affidavits. The first was from Eugene Shlatz, averring that he performed services for Frontier while employed by Navigant pursuant to the July 23, 1999 letter, and including the terms and conditions attached as an exhibit. A second affidavit was from Dawn Cassie, an Associate General Counsel for Navigant, who stated that Navigant acquired REED Consulting Group in 1997 and occasionally did business under the name "Navigant Consulting Inc./Reed." She also represented that Navigant had an agreement with Frontier as outlined in the July 1999 letter, and the terms and conditions were attached to that letter.

¶ 23. On appeal, Frontier claims that Navigant's proof was insufficient to demonstrate that there was an enforceable agreement for two reasons. First, Frontier asserts that Navigant failed to show that the terms and conditions, which were attached to the motion for summary judgment, is the document to which the July 1999 letter refers. Second, Frontier argues that there is insufficient proof that the terms and conditions appended to the July 1999 letter apply to the scope of work for the Richford substation articulated in the 2001 letter.

¶ 24. In assessing the sufficiency of Navigant's proof, we give Frontier as the nonmoving party the benefit of "all reasonable

doubts and inferences," but in contesting Navigant's submissions Frontier "may not rest on allegations in the pleadings to rebut credible documentary evidence or affidavits." *Clayton v. Unsworth*, 2010 VT 84, ¶ 16, 188 Vt. 432, 8 A.3d 1066 (quotation omitted). When the moving party supports their assertions of fact with submitted materials, including documents and affidavits, and the nonmoving party does not address the other party's assertions, the court may consider the facts undisputed. See V.R.C.P. 56(c), (e)(2) (requiring party to support assertion with citation to record, and allowing court to consider fact undisputed for purposes of motion where opposing party fails to properly address assertion of fact).

¶ 25. ██ Like the trial court, we reject Frontier's argument that Navigant's motion is supported by insufficient evidence to show that the terms and conditions it relies upon were the same terms referred to in the July 1999 letter and incorporated into the party's agreement. Frontier points out that the July 1999 letter states that the work will be "performed under NCI/REED's Standard Terms and Conditions," but the terms and conditions submitted by Navigant is titled "REED CONSULTING GROUP TERMS AND CONDITIONS." There was, nonetheless, enough support for Navigant's assertion that those terms and conditions were attached to the parties' original contract. The letter is signed by both parties, and refers to the terms and conditions. The letter identifies contractor as both Navigant Consulting Group, Inc. and as NCI/REED. Further, the affidavit from Cassie states that Navigant did business as Navigant/Reed, and the affidavits from both Shlatz and Cassie aver that those were the conditions agreed to and attached to the July 1999 letter. Although Frontier disputes these facts, it does not support its assertion with any evidence or citation to the record, and its mere denial is not sufficient to create a disputed issue of fact.

¶ 26. Similarly, Frontier failed to show there was a dispute of fact over whether the indemnification provision in the terms and conditions referred to in the 1999 letter applied to the 2001 agreement for work on the Richford substation. Frontier argues that the 2001 letter controls over the 1999 letter, and because it does not include reference to terms and conditions or indemnification, no indemnification is available. The trial court correctly determined that there is no dispute of fact that the terms and conditions apply to the work at the Richford substation. Navigant

asserted such and supported its assertion with the following documentary evidence. The 1999 letter refers to Navigant providing "on-going technical and professional support," and the 2001 letter states that it "proposes to perform these tasks under Navigant's existing services contract." Further, the affidavit from Eugene Shlatz states that the 2001 letter setting forth the scope of work to be provided in connection with the Richford substation was intended to supplement the 1999 contract. These documents were sufficient to support Navigant's assertions that the terms of the 1999 contract, including the incorporation of the terms and conditions, applied to the work performed on the Richford substation. Given that Frontier submitted no evidence to contradict the provisions of the letters or the statement in the affidavit, the trial court did not err in accepting as fact that the terms and conditions applied to the 2001 work agreement.

¶ 27. The undisputed facts also do not support Frontier's assertion that the 2001 agreement supplanted the indemnification provision in the 1999 agreement. Frontier correctly states the general rule that specific contract terms control over general ones. *Boston & Me. R.R. v. Howard Hardware Co.*, 123 Vt. 203, 213, 186 A.2d 184, 192 (1962) (concluding that specific paragraph controlled over general term in contract). This general rule does not apply here, however, where the 2001 scope-of-work letter does not contain any provision on indemnity and therefore does not contradict or supersede the 1999 agreement on indemnity.

¶ 28. Next, Frontier argues that the indemnification provision is not enforceable because it fails to clearly state that it applies to Navigant's sole negligence. On one occasion, this Court declined to enforce an indemnification provision for failure to expressly state that it would cover the sole negligence of the indemnitee. In *Tateosian v. State*, we concluded that an indemnification clause in a standard contract prepared by the State in which the contractor promised to defend against claims "arising as a result of [the contractor's] performance" of the contract did not cover the sole negligence of the State, the indemnitee. 2007 VT 136, ¶ 16. We held that because the language was ambiguous and there was a disparity in bargaining power between the two parties, the provision was insufficient to extend it to covering the indemnitee's sole negligence. *Id.* ¶ 22. We emphasized that the rule in Vermont remained that "an indemnity clause covers the sole negligence of the indemnitee only where it clearly expresses that intent." *Id.* ¶ 23.

¶ 29. ■ Since then, this Court has described *Tateosian* as implementing the "rule of construction" that "an indemnity provision covers the sole negligence of the indemnitee only if its language clearly expresses that intent." *Southwick v. City of Rutland*, 2011 VT 53, ¶ 9, 190 Vt. 106, 35 A.3d 113. Thus, we have subsequently enforced contractual-indemnity clauses where the language is "unambiguous" and part of an arm's-length deal. *Id.* ¶¶ 13-14; see also *State v. Prison Health Servs., Inc.*, 2013 VT 119, ¶ 9-10, 195 Vt. 360, 88 A.3d 414 (explaining that indemnification provisions that are unambiguous are given effect and indemnity will apply if parties engaged in arm's-length transaction).

¶ 30. ■ For those same reasons, we conclude that the indemnity clause in this case is enforceable. Unlike *Tateosian*, where there was a disparity in bargaining power, the agreement in this case was made between two parties in an arm's-length transaction. Further, the language expresses an intent to cover injuries and damages that occur as a result of either party's negligence. The indemnity clause states that Navigant is not "liable for any direct, consequential or special loss or damage, whether attributable to breach of contract, tort, including negligence, or otherwise" and that Frontier will "release, indemnify," and hold Navigant harmless. This result is consistent with our decisions since *Tateosian*, as well as decisions prior to *Tateosian* that were distinguished in that case. In *Southwick*, the contract provision required one defendant, the Vermont Swim Association (VSA), to indemnify the City of Rutland for "all claims for bodily injury or property damage arising from or out of the presence of [VSA] . . . or [VSA]'s activities," 2011 VT 53, ¶ 5, and we concluded that it was "deliberately broad enough to cover all injuries and damages that might occur — as a result of either party's negligence." *Id.* ¶ 13. The provision in this case is just as clear. Therefore, the trial court did not err in granting Navigant summary judgment on its claim for express indemnity.

¶ 31. On a final note, we address Frontier's motion to strike the supplemental printed case filed by Navigant, which includes the special jury verdict and subsequent stipulation by the parties to dismiss plaintiffs' claims. Frontier argues that this is an improper expansion of the record on appeal because these documents were not before the trial court at the time of its ruling on summary

judgment. In reaching our decision, we have not considered this information, and therefore we deny the motion as moot.

*Affirmed.*