Filed 02/09/26

VERMONT SUPERIOR COURT                                      CIVIL DIVISION
Chittenden Unit                                            Case No. 25-CV-03891
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



| Viktor Lagun v. Cheeseman Insurance, Inc. et al |
| --- |

# ENTRY ORDER REGARDING MOTION

Title:        Motion to Dismiss Crossclaim filed by Cheeseman Insurance (Motion: 3)
Filer:        Brian A. Suslak
Filed Date:   December 19, 2025

This case involves an insurance-coverage dispute brought by a policy holder, Plaintiff Viktor Lagun, against his insurance company, Defendant AmGUARD Insurance Company, Inc., and his broker, Cheeseman Insurance, Inc. AmGUARD has moved to dismiss the crossclaim for indemnification by Cheeseman. Lagun takes no position. Counsel represent all parties. For the reasons that follow, the court DENIES AmGUARD's Motion to Dismiss Cheeseman's Crossclaim (Mot. 3).

## I. Background[1]

Lagun insured a Burlington property through AmGUARD. The property's Primary Building sustained fire damage in October 2024, during the policy's 2024-25 policy period. Lagun procured coverage during that policy period directly from AmGUARD which has paid Lagun the policy limit and then some. Lagun seeks more.

Cheeseman had served as Lagun's agent during the policy's initial period in 2021-22. Lagun alleges among other things that Cheeseman incorrectly provided to AmGUARD the square footage for the Primary Building as 1,200, instead of its actual 5,000. Lagun partially blames Cheeseman's 2021 mistake for the incorrect square footage carrying over into the 2024-25 policy and leaving him underinsured.[2] Cheeseman denies Lagun's allegation.[3]

---

[1] The parties' submissions in this case contain numerous allegations and potential theories of liability. This section, like today's decision, focuses on the allegations most relevant to deciding the pending Motion, drawing all reasonable inferences in Cheeseman's favor, as required for the pending Motion. (*See infra* Section II.A.)

[2] (*See* Second Am. Compl. ¶ 27; Cross Claim ¶2.)

[3] Lagun alleges Cheeseman provided AmGUARD the incorrect square footage for the Primary Building. (Second Am. Compl. ¶ 23.) Cheeseman concedes Lagun's application stated the "[P]rimary [B]uilding had a total area of 1,200 square feet" but otherwise denies Lagun's allegation. (Cheeseman Answ. ¶ 23.)

Lagun asserts various claims against AmGUARD and Cheeseman for their alleged roles in providing insufficient coverage for the Primary Building. Cheeseman's crossclaim seeks indemnification from AmGUARD for any liability it may have under these circumstances. Cheeseman expressly narrows its crossclaim to a single implied theory of indemnification as an otherwise blameless seller of AmGUARD's policy.[4]

## II. Discussion

### A. Rule 12(b)(6) Legal Standard

Under V.R.Civ.P. 12(b)(6), the court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. The court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. American Legion, Dept. of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quotation omitted). "The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Off. of Child Support*, 173 Vt. 390, 395 (2002). As a result, only "where the plaintiff does not allege a legally cognizable claim, [is] dismissal . . . appropriate." *Montague*, 2019 VT 16, ¶ 11.

"The court's attention . . . is to be directed toward determining whether the bare allegations of the complaint constitute a statement of a claim under V.R.C.P. 8(a)." *Levinsky v. Diamond*, 140 Vt. 595, 600 (1982), *overruled on other grounds by Muzzy v. State,* 155 Vt. 279 (1990). Rule 8 requires a "short and plain statement of the claim" in "simple, concise, and direct" language with "all pleadings [to] be construed as to do substantial justice." V.R.Civ.P. 8(a), (e), (f). "[T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (citation omitted). Consequently, "[m]otions to dismiss for failure to state a claim are disfavored and should be

---

[4] (Opp. at 6-9.) Cheeseman emphasizes that "implied indemnity is appropriate if the indemnitee . . . '*was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently liable.*'" (Opp. at 6 (citation omitted) (emphasis in original).) Cheeseman continues:

> This is the type of scenario presented by Plaintiff's Amended Complaint and Cheeseman's Crossclaim against AmGUARD. Plaintiffs do not allege independent negligence or other liability by Cheeseman for the 2024-25 AmGUARD Policy in place at the time of the October 7, 2024 fire; nor could they, as Plaintiff Lagun and AmGUARD renewed and negotiated the terms of the 2024-25 Policy directly – including the amount of replacement cost coverage it provided – without any involvement by Cheeseman.

(*Id.* at 6-7.) The court need not address AmGUARD's other legal challenges to Cheeseman's crossclaim since Cheeseman has expressly identified a single theory of recovery. (*See id.*; Mot. at 4-5.) As discussed in Section II.A, the court may not address AmGUARD's premature challenges to the mostly nonexistent factual record in this case in deciding its Rule 12(b)(6) Motion. (*See* Mot. at 5 (asserting that "Cheeseman's indemnity claim should be dismissed with prejudice because it is unsupported by . . . the facts of this case").)

rarely granted." *Id*. (citation omitted). The court should be "particularly wary of dismissing novel claims because '[t]he legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'" *Montague*, 2019 VT 16, ¶ 11 (citation omitted).

## B. Indemnification

Cheeseman pursues a single theory of implied indemnification under its crossclaim where it asserts it "was not liable except as a seller of a product [the insurance policy] supplied to [it] by [AmGUARD] and [Cheeseman] was not independently culpable."[5] Restatement (Third) of Torts: Apportionment Liab. § 22(a)(2)(ii) (2000). Cheeseman "may . . . assert [this] *claim* for indemnity and obtain a contingent judgment in an action where [it has been] sued by [Lagun] as permitted by procedural rules, even though liability of [AmGUARD] has not yet been discharged." *Id*. cmt. b. (emphasis in original); *id*. Rptr.'s Note to cmt. i ("Virtually all states permit the indemnitee to assert his claim in the original suit, by cross-complaint or impleader, or in a subsequent suit against the indemnitor."); *see also Langlois v. Town of Proctor*, 2014 VT 130, ¶ 34, 198 Vt. 137 (noting that "while we are not constrained to follow the Restatements, we have generally done so unless there is strong rationale to the contrary") (citing *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 18, 183 Vt. 452 (describing that case in its own parenthetical as "following Restatement (Third) of Torts: Apportionment of Liability § 22(a)(2)(ii)")).

"Vermont law precludes contribution among joint tortfeasors but recognizes a right of indemnity if . . . the circumstances are such that the law will imply such an undertaking." *Peters v. Mindell*, 159 Vt. 424, 427 (1992). "The obligation of indemnity, however, is only imposed where there is a legal relationship between indemnitor and indemnitee." *Id*. at 428. A contract may create such a relationship since "accompanying every contract is an implied duty to perform with care, skill, reasonable expedience and faithfulness." *Id*. at 429 (citation and internal quotation omitted); *see also Hemond v. Frontier Commc'ns of Am., Inc.,* 2015 VT 66, ¶ 9, 199 Vt. 259 ("[I]ndemnity is 'imputed only when equitable considerations concerning the nature of the parties' obligations to one another or the significant difference in the kind or quality of their conduct demonstrate that it is fair to shift the entire loss occasioned by the injury from one party to another.'") (quoting *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 29 (1999)).

Where a party's alleged facts could enable a jury to find one non-negligent contracting party liable because of the negligence of another contracting party, the indemnification claim should survive summary judgment. *See Peters*, 159 Vt. at 429-30.

Cheeseman has adequately pleaded its indemnification crossclaim against AmGUARD under a theory of implied indemnification where Cheeseman may have no independent culpability.[6] Cheeseman's crossclaim does not specifically allege a legal or contractual

---

[5] (*See supra* fn. 3 and accompanying text and citations.)

[6] Cheeseman must ultimately meet other requirements to prove entitlement to indemnification from AmGUARD, but the court may not reach those questions in deciding the pending 12(b)(6) Motion. *E.g.*, *Haupt v. Triggs*, 2022 VT 61, ¶ 10, 217 Vt. 382 ("It is axiomatic that a party seeking implied equitable indemnity may recover only where its potential liability is vicariously derivative of the acts of the indemnitor and it is not independently culpable.")

relationship with AmGUARD. The parties do not dispute that Cheeseman served as AmGUARD's agent. The court must and does reasonably infer that legal and likely contractual relationship between them from the allegations in this case under AmGUARD's Rule 12(b)(6) Motion.[7]

Lagun's Second Amended Complaint asserts numerous claims, some common to both AmGUARD and Cheeseman and others unique to AmGUARD.[8] A variety of scenarios exist under which a jury could return a verdict against both AmGUARD and Cheeseman, as AmGUARD's one-time agent, without finding Cheeseman independently culpable. For instance, a jury could return a verdict for Lagun holding both AmGUARD and Cheeseman liable (Cheeseman as AmGUARD's one-time agent) because the 2024-25 policy contained 1,200 as the square footage for the Primary Building, even though Cheeseman bore no responsibility for any error in the 2021-22 policy.[9] A special verdict form may not accurately predict every jury outcome. Cheeseman should have an ability to raise indemnification under those or comparable circumstances where it has properly pleaded its Crossclaim against AmGUARD. The court concludes that Cheeseman has met the "exceedingly low" "threshold" to survive dismissal for now. *Bock v. Gold*, 2008 VT 81, ¶ 4.

### III. Order

For the reasons set forth above, the court DENIES AmGUARD's Motion to Dismiss Cheeseman's Crossclaim (Mot. 3).

Electronically signed pursuant to V.R.E.F. 9(d) on February 9, 2026.

Colin Owyang
Superior Court Judge

---

(citation and internal quotation omitted); *White v. Quechee Lakes Landowners' Ass'n.*, 170 Vt. 25, 29-30 (1999) (summarizing indemnification cases); *Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt. 12, 15 (1985) ("[U]nder Vermont law, one is not entitled to indemnity from a joint tortfeasor merely because one may be free from negligence, or another is more at fault."); *Allen v. Leopold*, No. 1:14-cv-22-jgm, 2015 WL 4600533, at *3, (D. Vt. Jul. 29, 2015) (explicating that a party may not receive indemnification for its own negligence).

[7] *See supra* Section II.A and cited authorities.

[8] (*See* Second Am. Compl.)

[9] Lagun alleges Cheeseman provided AmGUARD the incorrect square footage for the Primary Building. (Second Am. Compl. ¶ 23.) Cheeseman concedes Lagun's application stated the "[P]rimary [B]uilding had a total area of 1,200 square feet" but otherwise denies Lagun's allegation. (Cheeseman Answ. ¶ 23.)

4